FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 JAN -2 PM 4:44

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DR. VINCENT DILEO | * | |
| | * | CIVIL ACTION |
| VERSUS | * | NO. 00-0101 |
| | * | |
| LIBERTY MUTUAL INSURANCE | * | |
| COMPANY | * | SECTION "S"(2) |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO LIBERTY MUTUAL INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT AND REQUEST FOR ORAL ARGUMENT

MAY IT PLEASE THE COURT:

Plaintiff, Vincent Dileo, Jr., individually, and as the representative of a class of

persons similarly situated, files this memorandum for the purpose of opposing a Motion for

Summary Judgment filed by defendant, Liberty Mutual Insurance Company ("Liberty"). As

will be discussed herein, there remain numerous issues of material fact relative to the

status of Liberty and Liberty Mutual Fire Insurance Company (hereinafter referred to as

"Liberty Fire") as related "insurers" as defined by Louisiana statutory and jurisprudential

law. The actions taken by each insurer relative to the claim of Dileo and the class he seeks

to represent should serve to preclude this Honorable Court's granting of Liberty's motion,

even if there were no genuine issues of material fact, which is denied.

Fee_____
Process_____
X Dktd_____
CtRmDep_____
Doc.No._____

## FACTS AND PROCEDURAL BACKGROUND

On September 16, 1996, an automobile owned by Plaintiff, Dr. Vincent Dileo, was stolen. The 1982 Porsche 928 was insured by a policy of insurance issued by Liberty Mutual, but bearing the name Liberty Mutual Fire Insurance Company. Dr. Dileo duly reported the theft to Liberty Mutual and a claim was established. After assisting Dr. Dileo in seeking the criminal prosecution of the person responsible for the theft, Liberty Mutual eventually concluded that the 1982 Porsche 928 was a "total loss" within the purview of Dr. Dileo's insurance policy.

On or about April 12, 1999, Liberty Mutual offered to pay Dr. Dileo $7,841.13 in satisfaction of the claim. The offer purported to represent the "value" of Dr. Dileo's automobile as determined by ADP Claims Solutions, Inc., a computer valuation service employed by Liberty Mutual.

Dr. Dileo rejected the offer. He instead demanded payment by Liberty Mutual of the retail value ascribed to the vehicle by the National Automobile Dealers Association's (hereinafter "NADA") *Official Used Car Guide*, which equaled $13,700.00 at the time of the loss. Liberty Mutual refused to pay the amount demanded by Dr. Dileo. Indeed, Liberty Mutual refused to make any payment whatsoever - even though in the context of first party claims La. R.S. 22:658 and 22:1220 requires insurers to unconditionally tender the undisputed portion of an insured's claim within 30 days and 60 days of receipt of proof of loss respectively.

Because of Liberty Mutual's refusal to make any timely payment on the claim, despite demand for same, Dr. Dileo instituted this litigation in state district court on July 29, 1999. Recovery was sought for the NADA retail value of the "total loss" vehicle as well as damages, penalties and attorney's fees as allowed by La. R.S. 22:658 and La. R.S. 12:1220.

After suit was filed, discussions continued between the parties and, ultimately, Dr. Dileo's attorney, David Maraldo, received separate correspondences from both Liberty Mutual's Brian Faucheaux and the insurer's attorney, David Bienvenu, in which Liberty Mutual admitted that it owed Dr. Dileo the NADA retail value for the "total loss" vehicle. The letters from Messrs. Faucheaux and Bienvenu both indicated that Liberty Mutual would additionally agree to pay Dr. Dileo statutory penalties and attorney's fees. (Attached to plaintiff's pending Motion to Strike as Exhibits 1 and 2, respectively, are the October 26, 1999, letter from Brian Faucheaux to David Maraldo and the November 29, 1999 letter from David Bienvenu to David Maraldo). In fact, the November correspondence expressly stated that Liberty Mutual will amend its answer to include the foregoing admissions.

Based upon Liberty Mutual's representations, Dr. Dileo amended his state court petition on December 15, 1999, to make allegations on behalf of a class of Liberty Mutual insureds. The gist of the class's claims was that Liberty Mutual's systematic use of a computer valuation program to undervalue "total loss" claims constituted a breach of the duties imposed by both La. R.S. 22:658 and La. R.S. 22:1220.

3

On the same day, Liberty Mutual filed a "First Supplemental and Amending Answer"

which reiterated in a court filing the admissions originally contained in the referenced

letters.  The amended answer, which is part of the record in this Court provided, in

pertinent part, as follows:

> "**NOW INTO COURT,** through undersigned counsel, comes **LIBERTY MUTUAL INSURANCE COMPANY,** defendant, which files a First Supplemental and Amending Answer as follows:
>
> 1.
>
> Liberty Mutual admits that the NADA value of plaintiff's automobile at the time of loss was $13,700 and admits that it owes plaintiff the sum of $13,700 minus the policy's deductible of $500. Liberty Mutual will unconditionally tender this amount plus interest from the date of judicial demand."
>
> 2.
>
> Liberty Mutual admits that its failure to tender the above amount within 30 or 60 days after satisfactory proof of loss was without probable cause. Liberty Mutual will unconditionally tender the amount of $311 constituting legal interest from July 29, 1999, $1,320 representing statutory penalties payable pursuant to La. R.S. 22:658, attorney's fees in the amount of $2,000, court costs in the amount of $120 and return of premiums in the amount of $2000.

The foregoing admissions were critical because, through them, Liberty Mutual

judicially acknowledged that its use of a computer valuation system to determine the value

of "total loss" vehicles was improper.

Shortly thereafter, Liberty Mutual removed this putative class action to this

Honorable Court.  A joint scheduling order was agreed to by the parties and entered by this

Court.  The scheduling order set October 20, 2000, as the deadline for amending

4

pleadings. On that date, Liberty Mutual sought leave of court to drastically amend it

answer by retracting it prior admissions on dubious grounds and raising a host of

affirmative defenses. The eleventh hour pleading also raised for the first time the

allegation that Liberty Mutual Fire Insurance Company, not Liberty Mutual Insurance

Company, was Dr. Dileo's insurer.

Also on October 20, 2000, Dr. Dileo, without opposition, amended his complaint to

provide a more detailed factual basis for the class claims. The amended complaint neither

asserted any new causes of action nor theories of liability. On November 1, 2000, Liberty

Mutual filed what it styled as an "original answer" to Dr. Dileo's amended complaint. The

"original answer" incorporated all of the changes Liberty Mutual sought leave of court to

file in an amended answer on October 20, 2000. Subsequently, all of the following

procedural developments have transpired:

a)    Liberty Mutual withdrew its October 20, 2000, motion for leave to file an
       amended answer,

b)    Dr. Dileo has filed a motion to strike Liberty Mutual's "original answer" to Dr.
       Dileo's October 20, 2000, amended complaint and

c)    Liberty Mutual has filed a motion for summary judgment the gravamen of
       which is the allegation that because Liberty Mutual Fire Insurance Company,
       not the related Liberty Mutual Insurance Company, insured Dr. Dileo, then
       Dr. Dileo has no cognizable claim against Liberty Mutual Insurance
       Company.

Because Liberty Mutual Insurance Company answered Dr. Dileo's state court

petition over one year ago admitting that it was liable unto him under the insurance bad

5

faith statutes and because Liberty Mutual Insurance Company never alleged until the last

day for filing amended pleadings that a related insurance company was in fact Dr. Dileo's

insurer, leave has been sought to file an amended complaint to a) add Liberty Mutual Fire

Insurance Company as a defendant, b) restate the putative class's claims against Liberty

Mutual Insurance Company and c) correct a typographical error in the class definition

referring to an insurer not involved in this litigation.  Presently, this motion is set for hearing

on January 24, 2001.

It is also noteworthy that throughout the entire prosecution and conviction of Mickey

Reine, the individual who stole the Dileo vehicle, a representative of Liberty Mutual

Insurance Company accompanied Dr. Dileo.  Never did he deal with any employee of

Liberty Mutual Fire Insurance Company.

## ARGUMENT

### A.  Standard for granting a Motion for Summary Judgment

Summary judgment is appropriate only if the record discloses, "that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment

as a matter of law."  Fed R. Civ. P. 56(c); *Schwegmann Bank & Trust Company of*

*Jefferson v. Falkenberg*, 931 F.2d 1081 (5th Cir. 1991).  The pleadings, depositions,

admissions and answers to interrogatories, together with affidavits, must demonstrate that

no genuine issue of material fact remains.  *Celotex Corp. v. Garret*, 477 U.S. 317 (1986).

Generally speaking, material facts are those that will affect the outcome of a lawsuit under

6

governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). Consequently, summary judgment is inappropriate where an issue or issues of material fact remain affecting the outcome of the case. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

Finally, when judging the propriety of a Motion for Summary Judgment, all factual inferences must be resolved in favor of the non-moving party, *Reed v. State Farm Mut. Auto Ins. Co.*, 784 F.2d 577 (5th Cir. 1986), and summary judgment must be denied if the dispute concerning any category of fact is genuine, such that "a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

## B. Louisiana law defines Liberty Mutual Insurance Company as an "insurer"

Liberty has never argued, and it would be disingenuous for it to do so now, that it is not an insurer as defined by LSA-R.S. 22:1212 and the jurisprudence interpreting that statute. The Louisiana legislature has broadly and unambiguously proscribed what an "insurer" is for purposes of the bad faith statutes upon which Dileo and the class rely, specifically, LSA-R.S. 22:658 and 22:1220.

LSA-R.S. 22:1212 states in pertinent part

When used in this part:

    C.    "Insurer means any person reciprocal exchange, interinsurer, Lloyd's insurer, fraternal benefit society, industrial and burial insurer, or any insurer that markets under the Home Service Marketing distribution method and issues a majority of its policies on a weekly or

7

> monthly basis, or any other legal entity engaged in the
> business of insurance, including insurance agents,
> insurance brokers, surplus lines brokers, and insurance
> solicitors.  Insurer shall also mean medical service
> plans, hospital service plans, health maintenance
> organizations, and prepaid limited health care service
> plans.  For the purpose of this Part, these foregoing
> entities shall be deemed to be engaged in the business
> of insurance.

The scope of the definition of "insurer" as set forth in this statute is a broad one.

The obvious intent of the legislature was to circumscribe situations like the one at hand

wherein a legal entity, such as an insurance company like Liberty, attempts to sidestep

liability based on its own bad faith insurance practices by claiming that because it did not

issue the policy, it cannot be held liable.  The pervasive illogic of Liberty's argument is

tantamount to its contending that the law permits one company to issue the policy, have

another related company adjust claims in a fashion abusive to its own insureds, then to

claim that the company adjusting the claim can never be held accountable under LSA-R.S.

22:658 or 22;1220 because it did not issue the policy.  As will be discussed herein below,

Louisiana law does not permit such trickery by insurance companies.

It never has been disputed that Liberty adjusted Dileo's claim (See condensed

deposition testimony of Brian Faucheaux at page 7, attached hereto as Exhibit 3), nor that

Liberty adjusts all claims brought under any policy issued in Louisiana by an interrelated

Liberty company.  Moreover, Liberty itself has made admissions that it owes the NADA

value, penalties and attorney's fees to Dileo because it failed to pay the proper amount of

8

his claim "without probable cause", quoting the exact language from LSA-R.S. 22:1220(B)(5).

It cannot be disputed that the movant, Liberty, meets the definition of insurer as defined by the unambiguous wording of this statute. Moreover, Liberty already has admitted that it provides "various claims-handling and other services to Liberty Fire and its policy holders." (See Defendant's Statement of Material Facts That Are Beyond Genuine Dispute at ¶5). Liberty further acknowledges that "Liberty and Liberty Fire participate in a contractual reinsurance pooling agreement whereby Liberty reinsures the risks underwritten by each of the other pooling companies...Under that contractual pooling arrangement, Liberty can pay certain sums on behalf of any other pooling company, such as Liberty Fire. Including amounts to satisfy judgments or to settle claims against the other pooling company, and the pooling companies will reimburse each other according to their quota shares in the pool." (See Defendant's Statement of Material Facts That Are Beyond Genuine Dispute at ¶6).

These two admissions alone are fatal to Liberty's motion for summary judgment. They delineate the inextricable interrelation of both companies as envisioned by the definition of "insurer" as set forth in LSA-R.S. 22:1212. Hopefully, Liberty will not seek to withdraw these admissions at a later date like it has sought to withdraw numerous other damning admissions it has made in this litigation.

The definition of insurer was visited very recently by the Louisiana Fourth Circuit

9

Court of Appeal in *Fleming v. American Automobile Association, Inc.*, 99-1638 (La. App. 4th Cir. 6/21/00), 764 So.2d 274, *rehearing denied* (7/17/00). In *Fleming* the Court held that a travel insurer, the policy administrator, the medical assistance contractor and the wholesale tour provider were all "insurers" subject to the unfair trade practices provision of the Insurance Code. "All were intricately involved in marketing, soliciting the policy, selling, arranging for the underwriting, drafting, and administrating the insurance policies, collecting the premiums, and providing the benefits to the plaintiff." *Fleming*, 764 So.2d at 280.

In its analysis, the Fourth Circuit predicated its application of 22:1212 on the legal theory of solidary liability:

> La.C.C.P. art. 1797 provides that an obligation may be solidary. In *Hoefly v. Government Employees Insurance Company*, 418 So.2d 575 (La. 1982), the Louisiana Supreme Court held that an obligation is solidary among debtors when they are obligated to the same thing, so that each may be compelled for the whole, and payment by one exonerates the other toward the creditor. *Hoefly*, at 576. Differing sources of liability do not preclude an *in solido* obligation; the obligation may be *in solido* even though the obligations of the obligors arise from separate acts or by differing reasons. It is the co-extensiveness of the obligations for the same debt, not the source of the liability that determines the solidarity of the obligation. *James v. Fontana Plastics Corporation of Louisiana*, 95-1794 (La. App. 1 Cir. 4/4/96); 672 So.2d 319, *writ denied*, 96-1091 (La. 11/22/96) 683 So.2d 285; *Stonecipher v. Mitchell*, 26,575 (La. App. 2 Cir. 5/10/95); 655 So.2d 1381.

*Fleming*, 764 So.2d at 280.

Importantly, Liberty has not argued at any point that it is not solidarily obligated to

adjust and pay claims made relative to Liberty fire policies. To the contrary, as explained

above, Liberty has admitted that it assumes the performance of these obligations on behalf

of Liberty Fire. It would be counter-intuitive, at the very least, for Liberty now to argue that

even though it assumes these obligations on behalf of Liberty Fire, Liberty is not solidarily

obligated to Dileo and all other insureds in this class along with Liberty Fire and every other

related Liberty Company conducting business in this manner in the State of Louisiana. In

the various affidavits it has provided to this honorable Court, Liberty has never stated that

the various related Liberty companies do not share premiums.

Likewise, neither Liberty company could possibly argue that they were not acting

as a joint enterprise with regard to the claims of Dileo and others similarly situated. In

examining such an insurance scheme, the Fourth Circuit has given the only real

comprehensive explanation of the application of 112:1212 to date:

> The trial court collectively refers to the defendants as one
> because they shared in the premium. Defendants, at one point
> or another acted as insurance agents or brokers or
> underwriters or providers of services soliciting applications for
> polices of insurance, aiding and placing risks or effecting
> insurance and deriving substantial compensation and
> commissions from the premium. This joint enterprise of the
> defendants renders them liable for the acts or omissions in the
> Athens airport and on the return flight that caused Ms.
> Fleming's significant damages. No matter where the individual
> defendants point fingers, the evidence shows that they all, for
> a fee, assumed the responsibility of honoring the
> contract/Travel Insurance Policy toward the ultimate goal of
> selling the entire travel package to the plaintiff. It is difficult to

11

discern what role each individual defendant played in this
enterpreneurial scheme.

* * *

They are all clearly under the purview of La.R.S. 22:1212 and
fall into the definition of "insurer".

*Fleming*, 764 So.2d at 280.

Additionally, referring to the various defendant entitites, the Fourth Circuit noted that

"They were all parties to interconnecting contracts for the entire travel package." *Fleming*,

764 at 280. This is important because Liberty has acknowledged the contractual pooling

agreement that plays an instrumental part in Liberty's ability to perform functions on behalf

of Liberty Fire and the other related Liberty companies. This agreement is certainly an

interconnecting contract.

What is most noteworthy about the *Fleming* opinion, however,  is that the Court held

that numerous entities, several of which were not insurance companies, nevertheless were

engaged in the business of insurance and were all "insurers" under 22:1212.  Because

these non-insurance company defendants were held to be insurers, Liberty Mutual

Insurance Company, an insurer by its very name, is undoubtedly  an insurer under 22:1212

in the case *sub judice*.  Because of the indivisible interrelation of Liberty and Liberty Fire,

both must be considered insurers under LSA-R.S. 22:1212 and, Liberty's motion for

summary judgment should be denied.

### C.    Case law cited and relied on by Liberty does not apply to this situation

12

None of the case law cited by Liberty in its supporting memorandum so much as mentions LSA-R.S. 22:1212. At page 2 of its memorandum, Liberty cites the case *Gumpert v. Allstate Ins. Co.*, Civ. No. A 97-1531, 1997 WL 538003, \*4(E.D. La. Aug. 26, 1997) for the proposition that a defendant could not be held liable under a flood policy because the defendant was not a party to the flood policy. What Liberty conveniently fails to point out is that Allstate had filed a third party demand against FEMA and that claims against FEMA are governed specifically by 44 C.F.R. Cha. I§62.23(d). The *Gumpert* opinion does not provide any analysis of R.S. 22:1212, nor any analysis of a situation where one insurance company routinely adjusts claims for the company whose name is on the contract or insurance policy.

Liberty also attempt to rely on two cases at page 2 of its memorandum which arise from business contractual disputes and do not even involve insurance companies. *Kenny Enterprises, Inc. v. Balfour Beatty de Venezuela, C.A.*, Civ. No. A. 93-1630, 1994 WL 179976, (E.D. La. April 28, 1994) involved a business dispute wherein the Court dismissed one party, Balfour Beatty, Inc., and specifically found that there was no transaction whatsoever between the dismissed defendant and the plaintiff. That decision — which did not even involve an insurer — clearly has no application to the facts of this case, in which Liberty has admitted it adjusted Dileo's claims.

Next, Liberty cites a case involving a plaintiff's attempt to collect on a promissory note that the dismissed defendant did not execute. *Bridges v. Bell*, Civ. No. A. 94-1851,

13

1996 WL 371532 (E.D. La. July 1, 1996). Like *Kenny Enterprises, Inc.,* no insurer was named in this case and the case does not attempt to define insurer under 22:1212, or any other area of law.

Finally, at page 3 of its supporting memorandum, Liberty relies on *Woodruff v. State Farm Ins. Co.*, 99-2818 (La. App. 4th Cir. 6/14/00), 767 So.2d 785. Liberty's brief description of what it purports to be the holding(s) of this case is highly misleading. In *Woodruff,* a third party claimant did not meet any of the specific criterion of LSA-R.S. 22:658 or 22:1220 as has been well established by the Louisiana Supreme Court in *Theriot v. Midland Risk Ins.Co.*, 95-2895 (La. 5/20/97), 694 So.2d 184 and its progeny. In correctly holding that a third party claimant was not an insured covered by the policy, the only defendant sued was State Farm. However, State Farm did not dispute that it was an insurer, which is the position taken by Liberty in this case; rather, the only issues were whether a third party claimant was an insured, and, if not, whether he could avail himself to certain remedies provided under 22:658 and 22:1220. The case dealt with the status of the claimant or the insured under the statutes, not with the status of the insurer. This opinion, like the others, is factually dissimilar to the case at bar, and it makes no analysis of the definition of "insurer" for purposes of LSA-R.S. 22:1212.

With regard to Liberty's argument that it is not an insurer under 22:658 because the wording refers to an insurer issuing a policy, this would lead to an absurd consequence in that any company simply adjusting claims on behalf of another that issued the policy would

14

be absolved of any and all liability if the adjusting company acted in bad faith.

Louisiana Civil Code, article 13 states that "Laws on the same subject matter must be interpreted in reference to each other." Therefore, because LSA-R.S. 22:1212 proscribes the definition of "insurer" as it relates to LSA-R.S. 22:1220, it must apply to LSA-R.S. 22:658 and all three statutes ( 22:1212, 22:1220 and 22:658) must be read in *pari materia*.

## CONCLUSION

For all of the foregoing reasons, Liberty's Motion for Summary Judgment should be **DENIED.**

Respectfully submitted,

**RICHARD C. TRAHANT (Bar #22653)**
808 North Causeway Boulevard
Metairie, Louisiana 70001
Phone: (504) 831-4357

**WENDELL H. GAUTHIER (Bar #5984)**
**SCOTT LABARRE (Bar #17659)**
Gauthier, Downing, LaBarre, Beiser & Dean
3500 North Hullen Street
Metairie, Louisiana  70002
Phone:  (504) 456-8600

**KEITH P. RICHARDS (Bar #22564)**
Richards Law Firm, APLC
521 Europe Street
Baton Rouge, Louisiana 70802
Phone: (225) 334-9222

15

**STEVEN C. THOMPSON (Bar #14469)**
Moore, Walters & Thompson
6513 Perkins Road
Baton Rouge, Louisiana 70808
Phone: (504) 766-1100

**DAVID J. MARALDO (Bar #24541)**
4051 Veterans Boulevard, Suite 208
Metairie, Louisiana 70002
Phone: (504) 454-2769

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has been served upon counsel for all parties via telefax, hand delivery, or by depositing same in the U.S. Mail, postage prepaid, this 2nd day of January, 2001.

**RICHARD C. TRAHANT**



LIBERTY
MUTUAL.

Liberty Mutual Group

Personal Market Claims
3850 N.Causeway Boulevard, Suite 600
P.O. Box 8090
Metairie, LA 70002
Telephone:1-800-520-8844
Fax:(504)828-7240

OCTOBER 26, 1999

DAVID J. MARALDO
4051 VETERANS BLVD
SUITE 208
METAIRIE LA 70002

INSURED:       VINCENT DI LEO JR
CLAIMANT:      VINCENT DI LEO JR
DATE OF LOSS:  09/15/96
FILE NUMBER:   AL901-017731-98

Dear Mr. Maraldo:

Per our phone discussion this afternoon, please be advised that
Liberty Mutual is willing to fully compromise the above stated case for a
total of $21,640. As requested, I breakdown this figure as follows:
$13,200 for PD, 10% penalty = $1,320, $2K attorney fees, $120 incurred
court costs and $5K for possible recovery under 1220 and/or the claim for
lost premiums. . I think this settlement assessment is extremely amicable.
Please discuss this matter with your client and advise me ASAP. Thanks.

Sincerely,
BRIAN FAUCHEAUX
Claims Department
Ext. 320



PLAINTIFF'S
EXHIBIT

1

# TAYLOR, PORTER, BROOKS & PHILLIPS,
—LLP—

WILLIAM H. McCLENDON III
WILLIAM SHELBY McKENZIE
JOHN S. CAMPBELL, JR.
ROBERT H. BOROUE
JOHN A. THARP
W. LUTHAN WILSON
OFRALUS L. WALTER, JR.
J. CLAYTON JOHNSON
G. MICHAEL PHARIS
RICHARD E. GRUVES
A. MICHAEL DUFILHO
W ARTHUR ABERCROMBIE, JR
FREDRICK R. TULLEY
VERNON P. MIDDLETON
JAMES LESPER ELLIS
JOHN MICHAEL PARKER
NANCT C. DOUGHERTY
MARY R. THARP

JOHN ASHLEY MOORE
ERWIN W. FLESHMAN
VICKI M. CROCHET
HARRY J. PHILLIPS, JR.
LLOYD J. LUNCEFORD
THOMAS R. PEAK
C. MICHAEL HART
JOHN P. McDERMUTT *J
BRETT P. FURR
M. LENORE FEENEY
KATHLEEN C. MASON
MARC S. WHITFIELD J
JOHN H. RUNNELS**
DAVID J. MESSINA
GREGORY E. BODIN
JAMES C. CARVER
MARGARET L. TOOKE
DEBORAH B. LAMB

## ATTORNEYS AT LAW
Founded 1912

POST OFFICE BOX 2471
BATON ROUGE, LOUISIANA 70821
8TH FLOOR BANK ONE CENTRE
451 FLORIDA STREET (70801)

TELEPHONE (225) 387-3221
FACSIMILE (225) 346-8049

PAN-AMERICAN LIFE CENTER
601 POYDRAS STREET, SUITE 2655
NEW ORLEANS, LOUISIANA 70130

TELEPHONE (504) 524-1956
FACSIMILE (504) 471-1610

November 29, 1999

T. MacDOUGALL WOMACK
DAVID M. BIENVENU, JR
MATTHEW J. RANDAZZO III
DAVID J. SHELBT II
ERICK Y. MIYAGI
WILLIAM F. HODGKINS
ANNE JORDAN CROCLIGT
JAYNE L. MITGELETON
ROBERT W. MAKTON
PRESTON J. CASTILLE, JR
ELEANOR OWEN KERR
JOHN STEWART THARP
JOHN S. CAMPBELL III
JOHN P. MURRILL
BONNIE J. DAVIS**
MARY DOUGHERTY JACKSON H
ANDREE MATHERNE CULLENS
BRANDON K. BLACK

AMY GROVES LOWE
KATHERINE B MUSLOW
WM. ALAN MILLER
TAMARA D. SIMIEN
JOHN B. MOLANT, JR
PHILLIP E. FOCO
TODD E. MANUEL
TIMOTHY J. POCHE

OF COUNSEL
TOM F. PHILLIPS
FRANK M. COATES, JR
WILLIAM A. NORFOLK
JOHN L. GLOVER

H.U.M. IN TAGATAM
(RECARD CERTIFIED ESTATE SPECIALIST
*RECARD CERTIFIED (TAX SPECIALIST
**REGISTERED PATENT ATTORNEY

WRITER'S DIRECT DIAL NUMBER
(225) 381-0267

Mr. David Maraldo
4051 Veterans Blvd., Suite 208
Metairie, LA 70002

RE:    Vincent Dileo v. Liberty Mutual

Dear Mr. Maraldo.

I have been in a jury trial the last several weeks and write to address the motion to compel scheduled for Friday, December 3, 1999. I write to provide a roadmap for resolving this matter or at least streamlining the issues before the Court.

First, Liberty Mutual is amending its answer and acknowledges that Dr. Dileo is owed the NADA value of its vehicle at the time of loss of $13,700 and admits that it owes Dr. Dileo the sum of $13,700 minus the policy's deductible of $500. My understanding is that your office and Liberty Mutual do not dispute the NADA value. If I am misinformed, please let me know. Liberty Mutual will unconditionally tender to Dr. Dileo the sum of $13,200.

Second, Liberty Mutual, in its first supplemental and amending answer, has acknowledged that the failure to pay the claim of Dr. Dileo within 60 days of proof of loss was without probable cause. In addition to the unconditional tender tender of $13,200, Liberty Mutual will also unconditionally tender the amount of $311 constituting legal interest on the claim from July 29, 1999 (the date of judicial demand) through December 3, 1999, $1,320 representing statutory penalties payable pursuant to La. R.S. 22:658, attorney's fees in the amount of $2,000, courts costs in the amount of $120, and return of premiums in the amount of $2000. I anticipate receiving a check shortly which I will immediately transmit to your office.

With respect to La. R.S. 22:1220, the Louisiana First Circuit Court of Appeal ruled in *Champagne v. Hartford Casualty Insurance Group*, 607 So.2d 752 (La. App. 1st Cir. 1992 ), and in *Graves v. Businelle Towing Corp.*, 673 So.2d 311 (La. App. 1st Cir. 1996), that actual damages are required to be proven as a result of the statutory breach in order for the penalties to



Mr. David Maraldo
Page 2
November 29, 1999

apply. I am not aware of any contrary authority from the Fifth Circuit, but would consider any contrary authority. Moreover, La. Civ. Code art. 1810 disallows nonpecuniary damages (mental anguish, etc.) in breach of contract cases. Thus, absent some proof of pecuniary loss above and beyond the value of the claim, Liberty Mutual cannot tender any amounts pursuant to La. R.S. 22:1220 because damages have not been demonstrated. Liberty Mutual does not contest that its failure to pay the claim within 60 days was without probable cause.

The filing of the amending answer moots your discovery because Liberty Mutual has stipulated to liability but disputes certain elements of your client's damage claim. The only issue presented by the suit is whether your client is entitled to penalties under La. R.S. 22:1220 absent proof of pecuniary loss. Moreover, the acknowledgment of liability under 22:658 moots the attorney's fee claim for fraud also brought in the suit. Because the discovery is moot, the motion to compel is also moot.

Please inform my office whether you still intend to proceed with the motion to compel.

As to the remainder of your client's claim, Liberty Mutual is willing to negotiate with you over any outstanding issues that might remain in the suit. Alternatively, we can test the application of 22:1220 with a motion for summary judgment.

Please call or write if you wish to discuss this matter further. .

Very truly yours,

TAYLOR, PORTER, BROOKS & PHILLIPS, L.L.P.

David M. Bienvenu, Jr.

Dmb:
enc.    Motion to Amend Answer
        First Supplemental and Amending Answer
        Response to Discovery
        Opposition to Motion to Compel

CC:    Brian Faucheaux

**DR. VINCENT DILEO, JR. VS. LIBERTY MUTUAL INS.CO.   DEPO: B.C. FAUCHEAUX 10/4,**

**PAGE 1 TO PAGE 237**



RECEIVED
OCt 2 4 2000

**CONDENSED TRANSCRIPT AND CONCORDANCE**
**PREPARED BY:**

*BATON ROUGE COURT REPORTERS, INC.*
*11832NEWCASTLE AVENUE*
*BATON ROUGE,    70816*
*Phone:    (225)292-8686*
*FAX:    (225)292-4491*

**PLAINTIFF'S EXHIBIT**
3

**Page 1**

(1) UNITED STATES DISTRICT COURT
(2) EASTERN DISTRICT OF LOUISIANA
(4) DR. VINCENT DILEO, JR.    CIVIL ACTION
(5) versus    NO. 00-0101
(6) LIBERTY MUTUAL INSURANCE    SECTION "S"
COMPANY    JUDGE LEMMON
(7)    MAGISTRATE
WILKINSON
(11)    The deposition of BRIAN C. FAUCHEAUX,
(12) taken in the above-entitled cause, pursuant to
(13) the following stipulation, before Jan DiCicco,
(14) CCR, authorized to administer oaths of witnesses
(15) pursuant to Section 961.1 of Title 13 of the
(16) Louisiana Revised Statutes of 1950, as amended,
(17) taken at the Law Offices of Taylor, Porter,
(18) Brooks & Phillips, Pan American Life Center, 601
(19) Poydras Street, Suite 2665, New Orleans,
(20) Louisiana, on the 4th day of October, 2000.

**Page 2**

(1)    INDEX
(2) INDEX............................................... 2
(3) APPEARANCES................................... 4
(4) STIPULATION..................................... 5
(5) CERTIFICATE.................................. 236
(6) WITNESS' CERTIFICATE................... 237
(7) EXAMINATION
(8) BY MR. THOMPSON............................. 5
(11) EXHIBITS
(12) Exhibit 1................................. 82
(13) Exhibit 2................................. 87
(14) Exhibit 3................................ 105
(15) Exhibit 4............................... 119
(16) Exhibit 5............................... 122
(17) Exhibit 6............................... 131
(18) Exhibit 7............................... 173
(19) Exhibit 8............................... 176
(20) Exhibit 9............................... 176
(21) Exhibit 10.............................. 178
(22) Exhibit 11.............................. 182
(23) Exhibit 12.............................. 194
(24) Exhibit 13.............................. 229

**Page 3**

(1)    CERTIFIED QUESTIONS
(3)    PAGE    LINE
(5)    88    22
(6)    90    9
(7)    104    24
(8)    105    10
(9)    160    2
(10)    194    18
(11)    195    6

**Page 4**

(1) APPEARANCES:
(2) Attorneys for Dr. Vincent Dileo, Jr.:
(3)    MOORE, WALTERS & THOMPSON
(BY: STEVEN C. THOMPSON, ESQ.)
(4)    6513 Perkins Road
Baton Rouge, Louisiana 70808
LAW OFFICE OF RICHARD C. TRAHANT
(6)    (BY: RICHARD C. TRAHANT, ESQ.)
808 N. Causeway Boulevard
(7)    Metairie, Louisiana 70001
(8)    LAW OFFICE OF DAVID J. MARALDO
(BY: DAVID J. MARALDO, ESQ.)
(9)    4051 Veterans Boulevard
Suite 208
(10)    Metairie, Louisiana 70002
(11) Attorneys for Liberty Mutual Insurance Company:
(12)    VINSON & ELKINS
(BY: RUSSELL YAGER, ESQ.)
(13)    2001 Ross Avenue
3700 Trammell Crow Center
(14)    Dallas, Texas 75201-2975
(15) ALSO PRESENT:
(16)    BOB DAVIS
(17) REPORTED BY:
(18)    JAN DICICCO
CERTIFIED COURT REPORTER

**Page 5**

(1)    STIPULATION
(2)    It is stipulated and agreed by counsel
(3) for the parties that the deposition of BRIAN C.
(4) FAUCHEAUX is hereby taken for all purposes
(5) allowed under the Federal Rules of Civil
(6) Procedure;
(7)    That the formalities, save those as to
(8) the reading and the signing of the deposition by
(9) the witness, are specifically waived;
(10)    That all objections, save those as to
(11) the form of the questions and responsiveness of
(12) the answers, are hereby reserved until such time
(13) as this deposition, or any part thereof, may be
(14) used or sought to be used in evidence.
(15)    Jan DiCicco, Certified Court Reporter
(16) in and for the State of Louisiana, officiating
(17) administering the oath to the above-named
(18) witness.
(19)    *****
(20)    BRIAN C. FAUCHEAUX
(21) Liberty Mutual Group, 3850 N. Causeway
(22) Boulevard, Suite 600, Metairie, Louisiana,
(23) 70002, after first being duly sworn by the Court
(24) Reporter, did hereby testify as follows:
(25) BY MR. THOMPSON.

**Page 6**

(1) Q. Is it Fauche—
(2) A. Faucheaux, correct.
(3) Q. Mr. Faucheaux, my name is Steve
(4) Thompson, and you heard me introduce myself a
(5) moment ago. I'm going to be taking your
(6) deposition today. Have you ever given a
(7) deposition before?
(8) A. Yes, sir, I have.
(9) Q. Okay. Why don't we begin by you going
(10) ahead and stating your name and your residential
(11) address.
(12) A. Sure. It's Brian Charles Faucheaux.
(13) My residence address is 10141 Reynolds Drive.
(14) That's in South Kenner, Louisiana, 70094.
(15) Q. Mr. Faucheaux, I'm going to be asking
(16) you some questions today. You understand that
(17) you're giving this deposition under oath and on
(18) videotape, in fact, as though you were in court
(19) live, is that correct?
(20) A. Yes, sir.
(21) Q. If I ask you a question today that you
(22) don't understand, I'm going to request that you
(23) let me know you don't understand. I'll do my
(24) best to rephrase it so that, since you're
(25) answering under oath, you'll know what you're

**Page 7**

(1) answering. Does that sound fair enough?
(2) A. Yes, sir. Thank you.
(3) Q. And the other thing is, of course,
(4) that, like you've been doing so far, you'll have
(5) to give a verbal response to all questions so
(6) that the stenographer can take down your
(7) testimony. It's okay to nod your head, but use
(8) a yes or a no or an explanation with that. Is
(9) that fair enough?
(10) A. Yes, sir.
(11) Q. Why don't you go ahead and tell me who
(12) you work for and what your position is.
(13) A. Sure. I work for Liberty Mutual
(14) Insurance Company. My present position, I'm a
(15) claims supervisor.
(16) Q. Okay. How long have you been employed
(17) by Liberty Mutual?
(18) A. I've been employed with Liberty Mutual
(19) for approximately nine and a half years.
(20) Q. How long have you been a claims
(21) supervisor for Liberty Mutual?
(22) A. Approximately three months.
(23) Q. Okay. What I'd like you to do is kind
(24) of start at the beginning of your employment
(25) with Liberty Mutual and, if you would, kind of

**Page 8**

(1) tell me where you went to work at Liberty
(2) Mutual, which office, what your position was and
(3) the duties with each different position and kind
(4) of take me through to the present time.
(5) A. Okay. Well, I started with Liberty
(6) right out of college in April of '91. I've
(7) worked in the same office over that period of
(8) time in Metairie, Louisiana. My first position
(9) was just an adjuster 1 position.
(10) At the time when I started with
(11) Liberty, we only had really one general claims
(12) department which handled just about everything
(13) to do with liability, anywhere from personal
(14) automobile to commercial auto, commercial
(15) liability, homeowners. And then we had a
(16) separate department that handled workers' comp.
(17) I didn't have anything to do with the workers'
(18) comp part of it, though. I just dealt with
(19) commercial and personal claims.
(20) Within six months, I was promoted to, I
(21) believe they called it back then an adjuster 2
(22) position. Within eighteen months of starting, I
(23) was promoted to a senior claims adjuster. I
(24) would say probably at about the three year point
(25) or four year point, Liberty went through a split