

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA
JAN 16 2001
2001 JAN 16  PM 4: 40
LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DR. VINCENT DILEO, JR., | § | CIVIL ACTION |
| | § | |
| **Plaintiff,** | § | NO. 00-0101 |
| | § | |
| VS. | § | SECTION: "S" (2) |
| | § | |
| LIBERTY MUTUAL INSURANCE | § | UNITED STATES DISTRICT |
| COMPANY, | § | JUDGE MARY ANN VIAL LEMMON |
| | § | |
| **Defendant.** | § | MAGISTRATE JOSEPH C. WILKINSON, JR. |

## DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE HIS SECOND AMENDED COMPLAINT

On December 22, 2000, seventy-seven days after the October 6 deadline for seeking leave

to add parties and sixty-three days after the October 20 cutoff for seeking leave to amend pleadings,

Plaintiff Vincent DiLeo, Jr. ("DiLeo") moved for leave to file a new complaint that, if permitted,

would add a new defendant to this action, Liberty Mutual Fire Insurance Company ("Liberty Fire"),

and change the theory of recovery asserted against the existing defendant, Liberty Mutual Insurance

Company ("Liberty Mutual"). *See* Plaintiff's Motion For Leave to File Amended Complaint For

Fee_____
Process_____
X  Dktd_____
✓  CtRmDep_____
Doc.No._____

Class Certification And For Damages, Statutory Penalties And Attorneys' Fees (filed Dec. 22, 2000) ("Motion for Leave"). For the reasons stated below, DiLeo's Motion for Leave should be denied.

## I.    SUMMARY OF ARGUMENT

If permitted, DiLeo's proposed second amended complaint would (a) change the theory of recovery asserted against the existing defendant, Liberty Mutual, (b) add a new defendant, Liberty Fire, and (c) convert the putative class from one consisting of Liberty Mutual policyholders to one comprised of Liberty Fire policyholders. There are at least two reasons why DiLeo should not be permitted to alter this action so radically nineteen months after its filing on July 29, 1999.

First, there is no excuse for DiLeo's failure to assert his newly proposed theories of recovery against Liberty Fire and Liberty Mutual before (a) the October 6, 2000, deadline for moving for leave to add parties and/or (b) the October 20, 2000, deadline for moving for leave to amend pleadings. Policy documents produced to DiLeo's counsel on September 6, 2000, some 30 days before the October 6, 2000, deadline for moving for leave to add parties gave DiLeo notice that Liberty Fire–and not Liberty Mutual–issued the insurance policy underlying his claims in this action. Moreover, DiLeo and his counsel reviewed those policy documents during his deposition on September 29, 2000, when DiLeo answered several questions about them. Then, on October 4, 2000, two days before the October 6 deadline for seeking to add parties and two weeks before the October 20 deadline for seeking to amend pleadings, DiLeo's counsel questioned Liberty Mutual's Brian Faucheaux about the very same policy documents, which show plainly that Liberty Fire rather than Liberty Mutual issued the policy underlying DiLeo's claims. Further, DiLeo never even attempted–before or after October 6, 2000–to take any discovery to test his erroneous assumption that a class of Louisiana "total loss" claimants insured by Liberty Mutual would be large enough to satisfy the numerosity requirement of Rule 23. And Liberty Mutual certainly did not concede that

a such class would satisfy that threshold requirement. Thus, there is no excuse whatsoever for DiLeo's failure to discover his claims against Liberty Fire or to recognize the flaws in his current class definition before the October 6 deadline for moving for leave to add new parties.

Second, DiLeo's effort to amend his claims is futile. As DiLeo has finally admitted, the existing defendant in this action, Liberty Mutual, did not issue any insurance policy covering DiLeo's allegedly stolen Porsche. And, contrary to DiLeo's assertions, Liberty Mutual is not obligated to DiLeo *in solido* under the policy issued by Liberty Fire. Nor is Liberty Mutual otherwise liable to DiLeo as an insurer or an adjuster. Thus, DiLeo's effort to amend complaint to add new theories against Liberty Mutual is clearly futile.

In addition, DiLeo's effort to recover the alleged NADA retail value of his Porsche, whether from Liberty Mutual or from Liberty Fire, is barred as a matter of law by his admissions that he received the purported NADA retail value of that vehicle, less his $500 deductible, ***before he attempted to convert this case to a class action***. As a matter of law, DiLeo's admitted receipt of the NADA retail value of his Porsche before he attempted to convert this case to a class action bars him from recovering that sum through a judgment in this action. Moreover, it also deprives him of standing to pursue his claim on behalf of the putative class that the use of the CCC and ADP valuation systems rather than NADA retail value to determine the value of total loss vehicles violates La. R.S. 22:658 and/or La. R.S.22:1220 and breaches the terms of the Louisiana personal automobile insurance policy.

And, even if that were not the case, DiLeo's claim that NADA retail value is the only permissible basis for valuing a total loss vehicle in Louisiana nevertheless would be barred as a matter of law by Directive No. 18 of the Commissioner of Insurance, which states:

3

It has come to my attention that certain insurance companies writing vehicle insurance are adjusting automobile total losses solely on the basis of values published by trade organizations. Further, certain adjusters have represented to claimants and insureds that the so-called "Blue Books" are the final arbiter of values of used cars.

Under Louisiana law and the automobile policy contract, the measure of damages where the amount of damages exceeds the value of the automobile is the value of the automobile at the time of loss. *While published values of used cars may be a helpful tool in determining a settlement value, the automobile insurance company is obligated to determine the actual value of the particular car involved in the loss. Average values do not apply to particular cases. The ultimate answer must be determined by the actual market value of the particular automobile involved in the area where it is garaged.* Where a dispute arises over the value of the automobile, the company must use all available sources of information over and above the published values to attempt to determine the actual market value.

*See infra* at 22-23 (quoting Directive 18 of the Commissioner of Insurance of the State of Louisiana (dated Jan. 10, 1974)) (emphasis added). Thus, DiLeo's tardy efforts to amend his complaint should be denied as futile, as well as untimely.[1]

## II.    PROCEDURAL BACKGROUND.

As explained more fully at pages 4-7 of Defendant's Memorandum in Opposition to Plaintiff's Motion to Strike (filed Dec. 12, 2000), this action was filed in state court on July 29, 1999, and removed to this Court on January 11, 2000. Once in federal court, the case lay relatively dormant until the Supreme Court affirmed the Fifth Circuit decision underlying its removal: *Free v. Abbott Laboatories, Inc.*, 51 F.3d 524 (5th Cir. 1995), *aff'd*, 120 S. Ct. 1578 (2000). Then, on June 8, 2000, counsel for the parties met in Baton Rouge to discuss the issues raised by the Court's

---

[1]Liberty Mutual also contends that DiLeo's claims are barred by the fact that he signed a Power of Attorney authorizing the sale of his allegedly stolen Porsche and by the fact that he misrepresented the condition and value of his Porsche at the time of its alleged loss. *See* Defendant's Memorandum in Opposition to Plaintiff's Motion to Strike at 8-9 (filed Dec. 12, 2000); Defendant's Original Answer to Plaintiff's "Amended Complaint for Class Certification, and for Damages, Statutory Penalties and Attorneys' Fees" at 5-7, 10 (filed Nov. 1, 2000). Liberty Mutual recognizes, however, that these two facts are disputed and, thus, do not provide a basis for concluding on the current record that DiLeo's claims are futile.

4

Preliminary Conference Notice (filed May 12, 2000). *See* Declaration of Russell Yager in Opposition to Plaintiff's Motion to Strike at ¶ 4 (filed Jan. 16, 2001) ("Yager Dec."). DiLeo's conduct of this action in the months following that meeting bear significantly on the merits of his Motion for Leave.

### A.   Scheduling and Discovery.

During the meeting on June 8, 2000, counsel for the parties discussed, *inter alia*, outstanding discovery requests DiLeo had served in state court in July 1999 and the parties' respective intentions concerning further amendments of their pleadings. *See id.* at ¶ 5. Counsel for Liberty Mutual agreed to resolve the discovery dispute by treating DiLeo's July 1999 requests as having been served on June 8, 2000, and told DiLeo's counsel that Liberty Mutual intended to file an amended answer withdrawing the statements in its December 1999 supplemental and amending answer conceding (a) that the NADA value of DiLeo's Porsche at the time of its alleged loss was $13,700, (b) that Liberty Mutual owed DiLeo the sum of $13,700 minus his policy's deductible of $500, and (c) that Liberty Mutual's failure to tender $13,200 to DiLeo within 30 days after May 21, 2000, was without probable cause. *See id.* at ¶ 6.

On June 16, 2000, Liberty Mutual submitted a written response to the Court's scheduling questionnaire that confirmed its intention to amend its answer. *See id.* at ¶ 7 & Ex. 1. Then, on July 6, 2000, Liberty Mutual confirmed that intention once again by joining DiLeo in filing an agreed motion for entry of a Rule 16 Scheduling Order that provided an October 6, 2000, deadline for motions to amend pleadings and/or to join new parties. *See id.* at ¶ 8 & Ex. 2.

On July 10, 2000, Liberty Mutual served its promised responses to DiLeo's outstanding discovery requests. *See* Yager Dec. at ¶ 9 & Ex. 3. Because several of DiLeo's requests sought discovery of documents including confidential business proprietary information, Liberty Mutual

included with its responses a proposed Confidentiality Order and stated that it would provide discoverable documents responsive to such requests once the parties had negotiated and the Court had entered an appropriate order protecting their confidentiality. *See id.* at ¶ 9 & Ex. 3.

For six weeks, counsel for Liberty Mutual heard nothing from DiLeo concerning Liberty Mutual's July 10 discovery responses. *See id.* at ¶ 10. Then, on August 22, 2000, just six weeks before the deadline for moving for leave to amend pleadings or to add parties, Liberty Mutual's counsel finally received a strident letter complaining that the July 10 responses were insufficient and that the proposed Confidentiality Order was unacceptable. *See id.* at ¶ 10 & Ex. 4.

As one might expect, a series of conference calls in the ten-day period from August 28 to September 6 resolved all of DiLeo's objections to the proposed Confidentiality Order, and Liberty Mutual began producing the documents responsive to DiLeo's discovery requests on September 6, 2000, just two weeks after its counsel received DiLeo's letter of August 22. *See id.* at ¶ 11 & Exs. 5, 6. Among the documents Liberty Mutual produced to DiLeo's counsel on September 6, 2000, was a copy of the policy providing coverage for DiLeo's Porsche in the period from January 20, 1996, to January 20, 1997, bearing Bates Numbers LIB000509-LIB000545. *See id.* at ¶ 12 & Ex. 7.

The copy of DiLeo's 1996-1997 insurance policy that Liberty Mutual produced to DiLeo's counsel on September 6, 2000, shows plainly on its face that Liberty Fire–rather than Liberty Mutual–insured DiLeo's Porsche at the time of its alleged theft in late 1996. *See id.* at Ex. 7, pp. LIB000509, LIB000528. Thus, even if DiLeo's counsel never examined the copy of that policy sent to DiLeo shortly before its inception on January 20, 1996, they nevertheless had notice of DiLeo's claims against Liberty Fire when they received the copy of that policy from Liberty Mutual's counsel on or about September 7, 2000, some 29 days before the October 6 deadline for DiLeo to move for leave to add new parties.

Moreover, the transcript of DiLeo's video deposition on September 29, 2000, proves that DiLeo and his counsel examined an identical copy of that policy during his deposition and that DiLeo answered a series of questions confirming that the policy he and his counsel examined was the one that provided coverage for his Porsche at the time of its alleged theft. *See id.* at ¶ 13 & Ex. 9. Further, DiLeo's counsel used a copy of the same policy during his deposition of Brian Faucheaux on October 4, 2000. *See id.* at ¶ 13 & Ex. 8. Thus, it is crystal clear that DiLeo and his counsel had actual notice of DiLeo's claims against Liberty Fire before the October 6, 2000, deadline for seeking leave to add new parties.

Also clear is the fact that DiLeo did nothing to test the numerosity allegations of his December 1999 pleading before the deadline for seeking to add new parties. Indeed, DiLeo initiated no discovery whatsoever between the June 8 meeting of counsel and the October 6 deadline for moving for leave to add parties, other than the deposition of Brian Faucheaux. *See id.* at ¶ 13. In particular, DiLeo never served any requests for written discovery in that period to supplement the discovery requests he served in state court in July 1999, six months before his attempt to covert this case into a class action. *See id.* at ¶ 14. Thus, he never served any discovery requests concerning the numerosity, commonality, typicality, and/or adequacy requirement(s) set forth in Rule 23(a). *See id.* Likewise, he never served any discovery requests concerning the predominance and/or superiority requirement(s) stated in Rule 23(b)(3). *See id.*

Instead, DiLeo's lawyers waited until the eleventh hour and then called Liberty Mutual's counsel on October 5, 2000, to request an extension of (a) the October 6 deadline for the parties to move for leave to amend their pleadings or to add new parties and (b) the October 6 deadline for DiLeo to disclose his class-certification experts, if any, in accordance with Rule 26(a)(2). *See id.* at ¶ 15. Willing to accommodate opposing counsel as much as possible without relinquishing the

advantage Liberty Mutual had fairly achieved through DiLeo's lack of diligence, Liberty Mutual

agreed to an extension of the October 6 deadline for the parties to move for leave to amend their

pleadings and the October 6 deadline for DiLeo's to disclose his class-certification experts, but not

to an extension of the October 6 deadline for the parties to move for leave to add new parties. *See*

*id.* at ¶ 15 & Ex. 10.  Accordingly, the Amended Rule 16 Scheduling Order DiLeo proposed on

October 6, 2000, and the Court signed on October 10, 2000, extended the deadline to move for leave

to file an amended  pleading until October 20 but retained the original October 6 deadline for

motions to join new parties. *See* Amended Rule 16 Scheduling Order at p.1, ¶1.[2]

### B.    The Parties' New Pleadings.

As explained at pages 10-11 of Defendant's Memorandum in Opposition to Plaintiff's

Motion to Strike (filed Dec. 12, 2000), Liberty Mutual moved on October 20, 2000, for leave to file

a Second Amended Answer to the allegations contained in (a) the Original Petition for Damages

Plaintiff Vincent DiLeo, Jr., ("DiLeo") filed in state court on July 21, 1999, and (b) the Amended

and Supplemental Petition DiLeo filed in state court on December 15, 1999.  *See* Defendant's

Motion for Leave to File Its Second Amended Answer at Ex. A, p. 1 (filed Oct. 20, 2000); *see also*

Defendant's Motion for Leave to File Its Second Amended Answer at 4-7 (filed Oct. 20, 2000).

Among other things, Liberty Mutual's motion for leave, as well as the proposed amended answer

attached as an exhibit to that motion, pointed out that Liberty Fire–and not Liberty Mutual–issued

---

[2]Although Liberty Mutual subsequently agreed to the entry of a Second Amended Rule 16
Scheduling Order permitting class-certification discovery to continue until February 23, 2001,
nothing in the Second Amended Rule 16 Scheduling Order (filed Dec. 12, 2000) purports to extend
the deadline for moving for leave to add new parties or the deadline for moving for leave to file an
amended pleading.  Moreover, paragraph 4 of the joint motion seeking the entry of that Order
expressly preserves Liberty Mutual's right to oppose such a motion.  *See* Joint Ex Parte Order to
Amend Rule 16 Scheduling Order at p.2, ¶4 (filed Dec. 11, 2000).

the policy underlying DiLeo's claims. *See* Defendant's Motion for Leave to File Its Second Amended Answer at Ex. A, p. 3, ¶ IV (filed Oct. 20, 2000); *see also* Defendant's Memorandum of Points and Authorities in Support of Its Motion for Leave to Amend Answer at 5 (filed Oct. 20, 2000). The motion also corrected the erroneous statements in Liberty Mutual's First Supplemental and Amending Answer (a) that the NADA value of DiLeo's Porsche at the time of its alleged loss was $13,700,(b) that Liberty Mutual owed DiLeo the sum of $13,700 minus the policy's deductible of $500, and (c) that Liberty Mutual's failure to tender $13,200 to DiLeo within 30 days after May 21, 1999, was without probable cause. *See* Defendant's Motion for Leave to File Its Second Amended Answer at 4-7 (filed Oct. 20, 2000).

On the same day Liberty Mutual moved for leave to amend its answer, DiLeo moved for leave to file another complaint. *See* Unopposed Motion for Leave of Court to File Amended Complaint (filed Oct. 20, 2000). Four days later, the Magistrate Judge issued an order granting DiLeo's motion. *See* Order (dated Oct. 24, 2000). As a result, the Clerk filed DiLeo's new complaint on October 24, 2000. *See* Amended Complaint for Class Certification and for Damages, Statutory Penalties and Attorneys' Fees (filed Oct. 24, 2000) ("New Complaint").

In accordance with Rule 15(a), Liberty answered DiLeo's New Complaint on November 1, 2000. *See* Defendant's Original Answer to Plaintiff's "Amended Complaint for Class Certification and for Damages, Statutory Penalties and Attorneys' Fees" (filed Nov. 1, 2000) ("New Answer"). Like the proposed amended answer Liberty Mutual submitted with its October 20 motion for leave, the New Answer Liberty Mutual filed on November 1 stated that Liberty Fire rather than Liberty Mutual issued the policy underlying DiLeo's claims. *See* New Answer at p. 6, ¶ 16(a).[3]

---

[3]On November 3, 2000, Liberty Mutual filed and served a formal suggestion that the filing of DiLeo's New Complaint and Liberty Mutual's New Answer had mooted Liberty Mutual's

## C.    DiLeo's Cynical Effort to Conceal the Truth.

Although they had known since their receipt of Liberty Mutual's October 20 motion for leave

at the very latest that DiLeo had sued the wrong party (because Liberty Fire rather than Liberty

Mutual had issued the insurance policy underlying DiLeo's claims), DiLeo's counsel refused to face

the truth and seek leave to substitute Liberty Fire for Liberty Mutual as the proper defendant.

Instead, they launched a cynical attempt to salvage Liberty Mutual's obviously erroneous

concessions in its First Supplemental and Amending Answer that Liberty Mutual owed DiLeo the

sum of $13,700, minus the policy's deductible of $500, and that Liberty Mutual's failure to tender

$13,200 to DiLeo within 30 days after May 21, 1999, was without probable cause.  Thus, on

November 21, 2000, thirty-one days after Liberty Mutual's motion for leave pointed out that Liberty

Fire issued DiLeo's policy, DiLeo filed a motion to strike the portions of Liberty Mutual's New

Answer that retracted those obviously erroneous concessions.  *See* Plaintiff's Motion to Strike

Pursuant to Rule 12(f) (filed Nov. 21, 2000) ("Motion to Strike").  In support of that motion, DiLeo

made two incredible assertions:  that his New Complaint did not change his theory of the case and

that permitting Liberty Mutual to respond with a pleading that put the true facts at issue would

prejudice his counsel, who purportedly relied on the erroneous concessions in Liberty Mutual's First

Supplemental and Amending Answer when they attempted to convert this case to a class action.  *See*

Plaintiff's Memorandum in Support of Motion to Strike Pursuant to F.R.C.P. 12(f) at 3, 13, 15, 16

(filed Nov. 21, 2000).

---

October 20 motion for leave to file a second amended answer to DiLeo's 1999 pleadings.  *See*
Defendant's Suggestion that Recent Filings Have Mooted Defendant's Motion for Leave to File Its
Second Amended Answer (filed Nov. 3, 2000).  On November 6, 2000, the Magistrate Judge issued
an order dismissing that motion as moot.  *See* Hearing on Motion (filed Nov. 6, 2000).

**D.    The Fact that Changed DiLeo's Strategy.**

On December 12, 2000, Liberty Mutual responded to DiLeo's Motion to Strike by filing not only a memorandum in opposition, but also a motion for summary judgment. *See* Defendant's Memorandum in Opposition to Plaintiff's Motion to Strike (filed Dec. 12, 2000); *see also* Defendant's Motion for Summary Judgment and Memorandum in Support (filed Dec. 12, 2000). And, in support of its motion for summary judgment, Liberty Mutual submitted not only proof that Liberty Mutual did not issue a personal automobile policy to DiLeo, but also proof that, apart from a few policies issued through the Louisiana assigned-risk pool, Liberty Mutual has not issued *any* personal automobile policies to *any* Louisiana residents in the fifteen-year period since 1985. *See* Declaration of Mary Francis Rash at ¶¶2-4 (dated Dec. 11, 2000) (included in the Appendix to (1) Defendant's Memorandum in Opposition to Plaintiff's Motion to Strike and (2) Defendant's Motion for Summary Judgment at Tab 4); *see also* Defendant's Statement of Material Facts That Are Beyond Genuine Dispute at p.1, ¶2 (filed Dec. 12, 2000).

The fact that Liberty Mutual issued no more than a handful of personal automobile policies in the State of Louisiana during the class period defined in paragraph 4 of DiLeo's New Complaint–a fact that diligent plaintiff's counsel could have timely discovered long before the October 6, 2000, deadline for seeking leave to add new parties–proved far more important to DiLeo's counsel than the fact that they had sued the wrong defendant, and it quickly changed DiLeo's strategy. Recognizing that the dearth of policies issued by Liberty Mutual to Louisiana residents would destroy numerosity and preclude certification of the class defined in paragraph 4 of DiLeo's New Complaint, DiLeo's counsel responded by filing the instant Motion for Leave on December 22, 2000, seventy-seven days after the October 6 deadline for seeking leave to add parties, sixty-three days after the October 20 deadline for seeking leave to amend pleadings, and ten days after Liberty

Mutual submitted the proof DiLeo's counsel should have discovered *before* leveling class allegations against Liberty Mutual.

### E.    DiLeo's Gamesmanship Continues.

Remarkably, however, DiLeo has not withdrawn–or offered to withdraw–his pending Motion to Strike. *See* Yager Decl. at ¶ 17. Thus, even as he now presses an untimely motion for leave to correct erroneous allegations made in his prior pleadings, DiLeo is still trying to prevent Liberty Mutual from correcting similar mistakes in its prior answers and, thus, putting at issue the true facts concerning the alleged theft of his Porsche.

## III.    ARGUMENT.

Although Rule 15(a) provides that leave to amend "shall be freely given when justice so requires," justice plainly does not require this Court to grant DiLeo's Motion for Leave. Indeed, that motion should be denied for at least two reasons. First, there is no excuse for DiLeo's failure to assert his newly proposed theories of recovery against Liberty Fire and Liberty Mutual before (a) the October 6, 2000, deadline for moving for leave to add parties and/or (b) the October 20, 2000, deadline for moving for leave to amend pleadings. Second, DiLeo's effort to amend his claims is futile, because the claims asserted in his proposed new pleading are barred as a matter of law. Accordingly, and for the reasons stated below, the Court should deny DiLeo's Motion for Leave.

### A.    DiLeo's Inexcusable Failure to Discover and Assert His Proposed Theories of Recovery in a Timely Fashion Justifies a Denial of His Motion for Leave.

The facts chronicled *supra* at 5-11 compel at least five inescapable conclusions that justify a denial of DiLeo's Motion for Leave. First, DiLeo did nothing before the October 6 deadline for seeking to add new parties to discover either (a) the existence of his claim individual against Liberty Fire or (b) the lack of any basis for asserting claims on behalf of a putative class of Liberty Mutual

policyholders rather than a putative class of Liberty Fire policyholders. *See supra* at 5-8. Second, DiLeo purposefully ignored the identity of the proper defendant, Liberty Fire, for two full months after Liberty Mutual pointed out on October 20, 2000, that Liberty Fire rather than Liberty Mutual issued the policy underlying his claims. *See supra* at 8-12. Third, DiLeo's two month delay in seeking leave to add claims against Liberty Fire was the product of a cynical effort to prevent Liberty Mutual from putting at issue the true facts concerning the alleged theft of DiLeo's Porsche. *See supra* at 10-11. Fourth, DiLeo's tardy motion for leave to alter his claims against Liberty Mutual and to add Liberty Fire as a party defendant at this late juncture springs not from a recognition that the office of the complaint and answer is to permit introduction of the true facts, but from DiLeo's tardy realization of a fact it should have learned before leveling class-based claims against Liberty Mutual in the first place: the class of Liberty Mutual insureds defined in paragraph 4 of DiLeo's current complaint could never satisfy the numerosity requirement of Rule 23(a). *See supra* at 11. Fifth, by continuing to press his pending motion to strike portions of Liberty Mutual's current answer, DiLeo is seeking to deny Liberty Mutual the very same benefit he seeks through his untimely Motion for Leave: the benefit of amending away erroneous statements in a prior pleading. *See supra* at 12. Thus, the record amply justifies–indeed, virtually compels–a denial of DiLeo's Motion for Leave. *See Dussouy v. Gulf Coast Investment Corp.*, 660 F.2d 594, 599 (5th Cir. 1981) ("[W]here the movant first presents a theory difficult to establish but favorable and, only after that fails, a less favorable theory, denial of leave to amend on the grounds of bad faith may be appropriate.").

## B.    DiLeo's Proposed Amendments Would Be Futile.

As noted *supra* at 1-2, DiLeo's Motion for Leave seeks permission to file a new complaint that would assert new theories of recovery against the existing defendant, Liberty Mutual, and assert

against a new defendant, Liberty Fire, the same claims currently asserted against Liberty Mutual in the New Complaint DiLeo filed on October 24, 2000. As demonstrated *infra* at 14-24, however, permitting DiLeo to pursue his tardily proposed amendments would be futile. Accordingly, the Court should deny DiLeo's Motion for Leave not only as untimely, but also as futile. *See Union Planters Nat. Leasing, Inc. v. Woods*, 687 F.2d 117, 120 (5th Cir. 1982) (district court may deny leave to amend where proposed amendment would be futile).

### 1.  Permitting DiLeo to Pursue His New Theories of Recovery Against Liberty Mutual Would Be Futile.

DiLeo seeks leave to amend his complaint against the existing defendant, Liberty Mutual, to allege, *inter alia*, (1) that, with respect to insurance policies issued by Liberty Fire, Liberty is an "insurer" within the meaning of La. R.S. 22:1212, because Liberty Mutual adjusts policyholders' claims on behalf of Liberty Fire, (2) that, as an "insurer" within the meaning of La. R.S. 22:1212, Liberty Mutual owes Liberty Fire policyholders such as DiLeo the same duties under La. R.S. 22:658 and La. R.S. 22:1220 that Liberty Fire owes those policyholders, (3) that Liberty is also liable *in solido* with Liberty Fire for all of the obligations imposed on Liberty Fire by the policies it has issued to DiLeo and its other policyholders, and (4) that Liberty has confessed liability to DiLeo under his policy, as well as under La. R.S. 22:658 and La. R.S. 22:1220. *See* [Proposed] Second Amended Complaint for Class Certification and for Damages, Statutory Penalties and Attorneys' Fees at ¶¶ 36-42 (tendered Dec. 22, 2000).

Permitting DiLeo to pursue these proposed allegations would be futile for at least three reasons. First, although Liberty Mutual is certainly an insurer within the meaning of La. R.S.

14

22:1212 with respect to the policies it issues in Louisiana, its agreement to service claims on behalf of Liberty Fire clearly does not make Liberty Mutual an insurer within the meaning of La. R.S. 22:1212 with respect to policies issued by Liberty Fire rather than Liberty Mutual. And, as DiLeo concedes in paragraph 20 of his proposed new pleading, Liberty Mutual did not issue the policy underlying DiLeo's claims. Accordingly, Liberty Mutual owed no duty to DiLeo under his policy, under La. R.S. 22:658, or under La. R.S. 22:1220. Second, Liberty Mutual cannot be held liable *in solido* with Liberty Fire for the obligations Liberty Fire owed to DiLeo under his policy, because Liberty Mutual is not an obligor under that policy. Third, Liberty Mutual has already "amended away" the purported judicial confessions on which DiLeo relies, and, even if that were not the case, an order permitting DiLeo to file his proposed new pleading would certainly entitle Liberty Mutual to amend away those purported confessions in its answer to that pleading.

> **a. Liberty Mutual Did Not Owe a Duty to DiLeo under La. R.S. 22:1220 or La. R.S. 658.**

As noted above, DiLeo now seeks leave to allege that Liberty Mutual owed duties to DiLeo and other Liberty Fire policyholders under La. R.S. 22:1220 and La. R.S. 22:658 based on his contention that Liberty Mutual is an "insurer" under Liberty Fire policies within the meaning of La. R.S. 22:1212, because Liberty Mutual adjusts automobile claims on behalf of Liberty Fire. As a rule, however, adjusters are not insurers under La. R.S. 22:1220 or La. R.S. 22:658. *See Riley*, 923 F.Supp. at 888 (dismissing La. R.S. 22:1220 and La. R.S. 22:658 claims against adjuster because duty runs to insurers, not adjusters); *M&M Towing Co., Inc.*, 1998 WL 169694, at *1 (noting that insurance adjusters are not insurers under La. R.S. 22:1220 and/or La. R.S. 22:658). Indeed, the decision out of this District in *Coubarous v. Hertz Corp.*, Civ. A. No. 92-2638, 1992 WL 395508

(E.D. La. Dec. 11, 1992), demonstrates clearly that Liberty Mutual is not an insurer under Liberty Fire policies and, thus, that permitting DiLeo to pursue this theory would be futile.

In *Coubarous*, the plaintiff sued a group of defendants, including the Liberty Lloyds insurance company and an insurance adjuster for Allstate, seeking both statutory penalties and attorney's fees under La. R.S. 22:658 and La. R.S. 22:1220. *Id.* at *1. The *Coubarous* defendants moved to dismiss both Liberty Lloyds and the adjuster for Allstate, arguing that those parties had been fraudulently joined to destroy diversity jurisdiction. *Id.*

In support of their motion, the *Coubarous* defendants submitted an affidavit from Liberty Lloyds stating that the company did not insure the plaintiff on the date of the accident. *Id.* at 2. After reviewing the affidavit, the court granted defendants' motion as to Liberty Lloyds, holding that the plaintiff would be unable to recover against Liberty Lloyds under La. R.S. 22:1220 or La. R.S. 22:658, because Liberty Lloyds was not the plaintiff's insurer on the date of the accident. *Id.* Further, the court also dismissed Allstate's adjuster, holding that the plaintiff would not be able to recover against the adjuster under La. R.S. 22:1220 or 22:658, because an adjuster is not an insurer within the meaning of La. R.S. 22:1212. *Id.*

Under *Coubarous*, therefore, DiLeo plainly has no claim against Liberty Mutual under La. R.S. 22:1220 or La. R.S. 22:658, because DiLeo has now admitted that Liberty Fire rather than Liberty Mutual insured his Porsche at the time of its alleged loss, *see* [Proposed] Second Amended Complaint for Class Certification and for Damages, Statutory Penalties, and Attorneys Fees at ¶ 20 (tendered Dec. 22, 2000), and because adjusters are not "insurers" within the meaning of La. R.S. 22:1212. *See* 1992 WL 395508, at * 2.[4]

---

[4]By its express terms, La. R.S. 22:658 applies only to insurers ***issuing a contract***. *See* La. R.S. 22:658(A)(1) and (2). It follows, that an insurer that did not issue the contract underlying a

**b.    As a Matter of Law, Liberty Is Not Solidarily Liable with Liberty Fire for the Obligations of DiLeo's Policy.**

An obligation may be solidary only when each obligor is liable for the entire performance. *See* La. C.C. Art. 1794. The Louisiana Supreme Court has provided three requisites for solidarity: (1) each obligor must be obligated to the same thing, (2) each obligor must be obligated for the whole payment, and (3) payment by one obligor must exonerate the other. *Osborne v. Ladner*, 691 So.2d 1245, 1256 (La. App. 1st Cir. 1997) (citing *Hoefly v, Gov. Employees Ins. Co.*, 418 So.2d 575 (La. 1982)); *see also James v. Formosa Plastics Corp.*, 672 So.2d 319, 322 (La. App. 1st Cir. 1996) (stating that solidarity is founded upon "the coextensiveness of the obligations for the same debt . . ."). However, solidarity is not presumed; it must arise "from a clear expression of the parties intent or from the law." *See* La. C.C. Art. 1796. Thus, the party seeking solidarity must plead and prove all three elements. *See Conway v. Hibernia National Bank*, 553 So.2d 1041, 1043 (La. App. 4th Cir. 1989) (holding no solidarity because allegations in "petition, even if proven, do not establish that either party would be liable for the whole performance sought by plaintiff").

*Etienne v. National Auto. Ins. Co.*, 759 So.2d 51 (La. 2000), illustrates the rule. In *Etienne*, plaintiff sought to hold a law firm's insurer solidarily liable for damage caused by one of the law firm's employees even though the employee was not a named insured under the policy. *Id.* at 51.

---

plaintiff's claim is not liable to that plaintiff under La. R.S. 22:658. At least two rationales support this conclusion. First, La. R.S. 22:658 is a penal provision and must therefore be strictly construed. *Smith v. State Farm Fire and Casualty. Co.*, 695 F.2d 202, 206 (5th Cir. 1983). Second, La. R.S. 22:658 was enacted to penalize insurers who fail to pay claims timely, and, as noted above, only the insurer who enters into the insurance contract is obligated to pay such claims.

In this case, DiLeo has conceded that Liberty did not issue his contract of insurance. *See* [Proposed] Second Amended Complaint for Class Certification and for Damages, Statutory Penalties, and Attorneys Fees at ¶ 20 (tendered Dec. 22, 2000); *see also* Defendant's Statement of Material Facts That Are Beyond Genuine Dispute at ¶¶ 1-5. Therefore, irrespective of whether Liberty Mutual is an insurer under La. R.S. 22:1212 with respect to policies issued by Liberty Fire, Liberty Mutual clearly is not liable to DiLeo under La. R.S. 22:658.

The Louisiana Supreme Court rejected the argument. The Court focused on the fact that the insurer's "only potential liability arises from its contract of insurance." *Id.* at 57. Accordingly, the Court reasoned that the insurer could not be held liable in solido because the employee was not covered by the policy. *Id.* at 56-57.

Similarly, in *Sanders v. Zeagler*, 670 So.2d 748 (La. App. 3rd Cir. 1996), *rev'd in non relevant part*, 686 So.2d 819 (La. 1997), plaintiffs contracted two different construction companies to build their house. *Id.* at 748. When defects surfaced, plaintiff sued both builders and obtained a judgment in solido. *Id.* at 752. The appellate court reversed, finding that the trial court erred in holding the builders solidarily liable. The court focused on the fact that there was no evidence that the builders intended to be bound solidarily and that "[t]hey did not contract to do the same thing . . . [e]ach was obligation to do only what he contracted to do." *Id.* at 760. The court also noted that although both builders breached duties to the plaintiffs, one builder's breach caused design defects while the other builder's breach caused construction defects.

This case parallels *Etienne* and *Sanders*. As in *Etienne*, Liberty Mutual is not obligated to insure DiLeo under the insurance contract. *See* Defendant's Statement of Material Facts That Are Beyond Genuine Dispute at ¶¶ 1-5; *see also M&M Towing Co., Inc. v. United Capitol Ins. Co.*, No. Civ. A. 98-0812, 1998 WL 169694, at *1 (E.D. La. April 9, 1998) (stating that an insured has no cause of action under Louisiana law for breach of an insurance policy where there is no privity of contract); *cf. Riley v. Transamerica Ins. Group*, 923 F. Supp. 882, 887 (E.D. La. 1996) (noting that a non-party to an insurance contract has no contractual rights thereunder).[5] As in *Sanders*, Liberty

---

[5] The fact that DiLeo entered into a contract with non-party Liberty Fire, an affiliate of Liberty Mutual, does not change this result. It is well settled that the law recognizes and respects the division of liability among affiliated but distinct corporate entities. *See United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (noting that even where one affiliated corporation actually

Mutual and Liberty Fire did not contract for the same performance, and there is no evidence that Liberty Mutual and Liberty Fire intended to be held solidarily liable. *Id.* Accordingly, DiLeo cannot establish solidary liability.

And, contrary to DiLeo's assertions, this case is clearly distinguishable from *Fleming v. American Auto. Ass., Inc.*, 764 S.2d 274 (La.App. 4th Cir. 2000). In *Fleming*, a tourist brought a contort action against her travel insurer, policy administrator, medical contractor, and tour provider for personal injuries, including pain and suffering, resulting from a mishandled medical evacuation in Greece. *Id.* at 274. The tourist successfully argued at trial that the entire group was solidarily liable for a breach of a duty of good faith arising under a travel insurance policy she purchased from the defendants. *Id.* at 279. The court appellate court upheld, relying on the fact that the plaintiff established that the defendants were all contracting parties, and for a share of the premium, had agreed to assume responsibility for honoring the insurance policy. *Id.* at 280. The court specifically noted that "[r]egardless of how insignificant their percentage of the $59.00 premium, ***they were all parties to the contract for travel insurance with [the plaintiff].***" *Id.* (emphasis added).

Accordingly, *Fleming* is distinguishable from this case in at least three ways. First and foremost, Liberty is not a party to the contract for insurance. *See* Defendant's Statement of Material Facts That Are Beyond Genuine Dispute at ¶¶ 1-5 (filed Dec. 12, 2000). Second, DiLeo has not alleged–and cannot prove–that Liberty Mutual received a direct share of the premiums DiLeo paid

---

controls another "[i]t is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries.") (citation omitted); *see also Greenslate v. Tenneco Oil Co.*, 623 F. Supp. 573, 575 (E.D. La. 1985) (finding affiliated companies must be treated as separate entities when determining potential rights under an indemnity agreement). Plaintiff has not pled any facts, presented any evidence, or cited any authority to rebut this strong presumption.

Liberty Fire under his policy. *Id.* Third, in *Fleming*, the plaintiff was seeking damages for physical injury, *Fleming*, 764 S.2d at 274, and, thus, public policy may have supported the court's extension of the duties at issue in that case. Here, by contrast, DiLeo seeks purely economic damages, and the same rationale for extension therefore does not apply.

Moreover, *Fleming* is not binding on this Court. When determining the content of state law, a federal court must predict how the state's highest court would rule on the issue. *Matheny v. Glen Falls Ins. Co.*, 152 F.3d 348, 353 (5th Cir. 1998). "In making this prediction, the decisions of the intermediate state courts provide guidance, but are not controlling." *Id.* Limited or cursory analysis by a single intermediate court certainly is not persuasive. *Id.* at 354; *see also Hulin v. Fibreboard Corp.*, 178 F.3d 316, 328 (5th Cir. 1999) (stating that the Fifth Circuit must reverse a district court that adopts the opinion of an intermediate state appellate court that "'is against the more cogent reasoning of the best and most widespread authority'") (citation omitted). In addition, the holding of a single ***Louisiana*** appellate court is even less persuasive, because Louisiana's "primary sources of law are its constitution, codes, and statutes and the decisions of its courts are secondary sources of law until and unless the numbers and unanimity of such decisions achieve the force of law through the Civil Law doctrine of jurisprudence constante." *F.D.I.C. v. Abraham*, 137 F.3d 264, 268 (5th Cir. 1998).

As discussed *supra* at 17-18, the decision of the Supreme Court of Louisiana in *Etienne* endorses a narrower application of the *in solido* doctrine than that DiLeo seeks to draw from *Fleming*. *See Etienne*, 759 So.2d at 57. Moreover, the Louisiana Civil Code expressly states that solidary liability is not presumed. *See* La. C.C. Art. 1796. When determining whether Liberty Mutual can be held solidarily liable for Liberty Fire's obligations, therefore, this Court must look to *Etienne* and the Louisiana Civil Code–not to *Fleming*.

20

c.    **DiLeo Cannot Maintain a Claim Against Liberty Mutual Based on Its Withdrawn Admissions.**

DiLeo alleges that Liberty "has judicially confessed its liability unto Dr. DiLeo for the bad faith adjustment of his 'total loss' claim." *See* Plaintiff's Motion for Leave at ¶40. However, DiLeo's continued reliance on Liberty Mutual's prior admissions is misplaced. Liberty Mutual timely filed an answer to the live pleading in this case. *See* Original Answer to Plaintiff's "Amended Complaint For Class Certification And For Damages Statutory Penalties And Attorney's Fees" (filed November 1, 2000) at 1-2. This answer superceded and withdrew the admissions on which DiLeo relies to establish claims against Liberty Mutual under La. R.S. 22:1220 and La. R.S. 22:658. *Id.* It is well settled that "[o]nce an amended pleading is interposed, the original pleading no longer performs any function in the case . . . ." Moreover, the Fifth Circuit has made clear that an admission amended away by a subsequent pleading cannot be used to raise a genuine issue of material fact. *See Hibernia National Bank v. Carner*, 997 F.2d 94, 100-101 (5th Cir. 1993).

2.    **Permitting DiLeo to Pursue His NADA Theories Against Liberty Fire Also Would Be Futile.**

a.    **DiLeo Lacks Standing to Pursue His NADA Claims.**

Under Louisiana law, payment is a complete defense to a claim for money damages, including a policyholder's claim for indemnity under an insurance policy. *Livings v. Langston Cos.*, 628 So.2d 1236, 1239 (La. App. 3rd Cir. 1993); *see also Gulf Coast Bank & Trust Co. v. Donnaud, Inc.*, 759 So.2d 268, 272 (La. App. 5th Cir. 2000) (recognizing that payment is a defense to a suit on a promissory note). And DiLeo has admitted that he has already received the purported NADA retail value of his Porsche at the time of its alleged loss ($13,700), less the applicable $500 deductible under his policy. *See* Plaintiff's Memorandum in Support of Motion to Strike Pursuant

to F.R.C.P. 12(f) at 7 & Exhibit 2 (filed Nov. 21, 2000). Thus, DiLeo's effort to recover the NADA value for his Porsche through a judgment entered in this lawsuit is plainly futile.

Moreover, DiLeo's receipt of the NADA value of his Porsche, less his deductible, also extinguished the personal stake in his NADA theory that was necessary to permit him to pursue that theory on behalf of the putative class. Accordingly, DiLeo's admitted receipt of that amount bars not only his individual claims for the NADA value of his Porsche,[6] but also the class claims he seeks to prosecute on behalf of other policyholders.[7]

### b.   Directive 18 Bars DiLeo's NADA Claims as a Matter of Law.

Even if DiLeo's admitted receipt of the purported NADA retail of his Porsche at the time of its alleged theft did not deprive DiLeo of standing to assert his NADA claims on behalf of himself and the putative class, those claims nevertheless would be barred by Directive No. 18 of the Commissioner of Insurance of the State of Louisiana, which states:

> It has come to my attention that certain insurance companies writing vehicle insurance are adjusting automobile total losses solely on the basis of values published by trade organizations. Further, certain adjusters have represented to claimants and insureds that the so-called "Blue Books" are the final arbiter of values of used cars.
>
> Under Louisiana law and the automobile policy contract, the measure of damages where the amount of damages exceeds the value of the automobile is the

---

[6]A named plaintiff's "action is moot where (1) the controversy is no longer live or (2) the [named plaintiff] lack[s] a personal stake in the outcome." *Rocky v. King*, 900 F.2d 864, 866 (5th Cir. 1990). A class "action is moot where the named plaintiff's individual claim [becomes] moot before class certification." *Id.* at 867.

[7]Standing requires an addressable "allegation of present or immediate injury in fact..." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 803; 105 S.Ct. 2965, 2970 (1985). Moreover, "it is well settled that to have standing to sue as a class representative it is essential that a plaintiff be a part of the class, that is, he must possess the same interest and suffer the same injury shared by all members of the class he represents." *Schlesinger v. Reservists Committee*, 418 U.S. 208, 216, 94 S.Ct. 2925, 2929 (1974). Because DiLeo was actually paid NADA value for his total loss claim, DiLeo can neither allege an addressable present injury nor establish that he is a member of the alleged class.

value of the automobile at the time of loss. *While published values of used cars may be a helpful tool in determining a settlement value, the automobile insurance company is obligated to determine the actual value of the particular car involved in the loss. Average values do not apply to particular cases. The ultimate answer must be determined by the actual market value of the particular automobile involved in the area where it is garaged.* Where a dispute arises over the value of the automobile, the company must use all available sources of information over and above the published values to attempt to determine the actual market value.

All companies are hereby directed to comply with the above directive . . . .

Directive 18 of the Commissioner of Insurance of the State of Louisiana (dated Jan. 10, 1974) (emphasis added).

Contrary to the suggestions in paragraphs 29 and 30 of DiLeo's proposed second amended complaint, Directive 18 is the only authoritative statement of Louisiana law addressing DiLeo's unsupported assertion that insurers must use NADA retail value as the sole determinant of the actual cash value of a total loss vehicle. Neither *Allstate* nor any of the other cases DiLeo cites in his proposed amended complaint requires a different result. Moreover, the Louisiana legislature has had twenty-seven years to take issue with Directive 18, but has declined to do so. Accordingly, Directive 18 constitutes the law of the State of Louisiana, and it binds this Court just as tightly under *Erie* as a decision of Louisiana's Supreme Court. *See Dickinson v. First National Bank*, 400 F.2d 548, 557-558 (5th Cir. 1968) (where ruling by state comptroller on a banking issue was the only law of the state, federal courts were bound to follow it); *see also Dancy v. Commissioner of Internal Revenue,* 872 F.2d 84, 85 (4th Cir. 1989) (stating that federal courts are duty bound to review administrative determinations when ascertaining state law); *Knuth v. Erie–Crawford Dairy Cooperative Ass.*, 463 F.2d 470, 483 (3rd Cir. 1972) (A state administrative agency's "interpretations of its own regulations ought to be binding on a federal court, at least in instances where there is no [state] court decision

to the contrary.").[8] Thus, permitting DiLeo to pursue his NADA claims, whether against Liberty Mutual or Liberty Fire, would be futile, as those claims are barred as a matter of law by the plain language of Directive 18.

## IV.    CONCLUSION.

For the reasons stated above, DiLeo's Motion for Leave should be denied.

---

[8]*Orme v. Lendahand Co., Inc.*, 128 F.2d 756 (D.C. Cir. 1942), also illustrates the rule that, in the absence of clear guidance from a state court or legislature, a federal court must rely on administrative directives to determine the content of state law under *Erie*. In *Orme*, the D.C. Circuit was called upon to construe a Maryland banking statute regarding notary fees. *Id.* at 756. The issue had not been directly addressed by the Maryland courts or legislature. *Id.* at 758. However, long-settled administrative practice within the state allowed banks to charge the fees. *Id.* at 758. Courts in other jurisdictions interpreting similar statutes disagreed with this construction. *Id.* at 758-759. The court sided with the state agency, finding that administrative practice was highly persuasive and the best evidence of state law. *Id.* at 758. The court further noted that "[i]t would be a delicate thing for a foreign court to disregard or attempt to overturn [administrative] practice... *Id.* at 758. In addition, the court reasoned that the legislature had indicated its approval of the administrative practice, because the legislature had made no effort to change the practice in the past twenty-three years. *Id.* Further, this case parallels *Orme*, as no Louisiana court has directly addressed the issue of whether an insurer must rely on solely on NADA retail values to determine the actual cash value of a total loss vehicle.

Respectfully submitted,

W. Shelby McKenzie, No. 10020
David M. Bienvenu, Jr., No. 20700
TAYLOR, PORTER, BROOKS
& PHILLIPS, L.L.P.
451 Florida Street, 8th Floor
P.O. Box 2471
Baton Rouge, LA 70821
Telephone:  (225) 387-3221
Facsimile:  (225) 346-8049

Robert C. Walters
Russell Yager
Keefe M. Bernstein
VINSON & ELKINS L.L.P.
3700 Trammell Crow Center
2001 Ross Avenue
Dallas, Texas 75201
Telephone:  (214) 220-7700
Telecopy:  (214) 999-7716

*Attorneys for Defendant Liberty Mutual
Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that, on this 16th day of January, 2001, I caused a true and correct copy of Defendant's Memorandum in Opposition to Plaintiff's Motion For Leave to File Amended Complaint For Class Certification And For Damages, Statutory Penalties And Attorneys' Fees to be served on the following counsel by facsimile and first-class mail:

Keith P. Richards, Bar No. 22564
RICHARDS LAW FIRM, APLC
521 Europe Street
Baton Rouge, Louisiana 70802
Telephone: (225) 334-9222
Facsimile: (225) 334-9290

Steven C. Thompson, Bar No. 14469
MOORE, WALTERS & THOMPSON,
A PROFESSIONAL CORPORATION
6513 Perkins Road
Baton Rouge, Louisiana 70808
Telephone: (225)766-1100
Facsimile: (225) 767-4486

Richard C. Trahant, Bar No. 22653
808 North Causeway Boulevard
Metairie, Louisiana 70001
Telephone: (504) 831-4357
Facsimile: (504) 833-1329

Scott LaBarre, Bar No. 17659
GAUTHIER, DOWNING, LABARRE,
BEISER & DEAN
3500 North Hullen Street
Metairie, Louisiana 70002
Telephone: (504) 456-8600
Facsimile: (504) 456-8624

David J. Maraldo, Bar No. 24541
DAVID J. MARALDO,
A PROFESSIONAL LAW CORPORATION
4051 Veterans Blvd., Suite 208
Metairie, Louisiana 70002
Telephone: (504) 454-2769
Facsimile: (504) 454-3855

KEEFE M. BERNSTEIN

Dallas:443614.2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DR. VINCENT DILEO, JR., | § | CIVIL ACTION |
| | § | |
| Plaintiff, | § | NO. 00-0101 |
| | § | |
| VS. | § | SECTION: "S" (2) |
| | § | |
| LIBERTY MUTUAL INSURANCE | § | UNITED STATES DISTRICT |
| COMPANY, | § | JUDGE MARY ANN VIAL LEMMON |
| | § | |
| Defendant. | § | MAGISTRATE JOSEPH C. WILKINSON, JR. |

**DECLARATION OF RUSSELL YAGER IN OPPOSITION TO PLAINTIFF'S
MOTION FOR LEAVE TO FILE HIS SECOND AMENDED COMPLAINT**

1.      My name is Russell Yager. I am over twenty-one years of age. I have never been

convicted of a felony. I have personal knowledge of the facts stated in this declaration. All of the

statements of fact contained in this declaration are true.

2.      I am an attorney admitted to practice law in all of the courts of the State of Texas, as

well as in the United States District Courts for the Northern, Eastern, and Southern Districts of

Texas, in the United States Courts of Appeals for the Third, Fifth, and Ninth Circuits, and in the

Supreme Court of the United States.

3.      I am a partner of in the law firm of Vinson & Elkins L.L.P., and, in that capacity, I

serve as counsel to Liberty Mutual Insurance Company ("Liberty Mutual") in the above-captioned action. I have been admitted to practice in this Court *pro hac vice*.

4.    On June 8, 2000, Liberty Mutual's local counsel, David Bienvenu, and I met in Baton Rouge with counsel for plaintiff Vincent DiLeo, Jr., ("DiLeo") to discuss the issues raised by the Court's Preliminary Conference Notice (filed May 12, 2000). Steven Thompson, Richard Trahant, Keith Richards, and David Maraldo attended the meeting on behalf of DiLeo.

5.    During the June 8 meeting, counsel for the parties discussed, *inter alia*, the outstanding discovery requests counsel for DiLeo had served in state court in July 1999 and the parties' respective intentions concerning further amendments of their pleadings.

6.    As lead class-action counsel for Liberty Mutual, I agreed to resolve the discovery dispute by treating DiLeo's July 1999 requests as having been served on June 8, 2000. I also stated that Liberty Mutual intended to file an amended answer withdrawing the statements in its December 1999 Supplemental and Amending Answer conceding (a) that the NADA value of DiLeo's Porsche at the time of its alleged loss was $13,700, (b) that Liberty Mutual owed DiLeo the sum of $13,700 minus his policy's deductible of $500, and (c) that Liberty Mutual's failure to tender $13,200 to DiLeo within 30 days after May 21, 2000, was without probable cause. I specifically recall discussing with DiLeo's counsel both Liberty Mutual's belief that such an amendment would be proper and the stated belief of some of DiLeo's attorneys that Liberty Mutual might not have the right to file such an amendment.

7.    On June 16, 2000, Mr. Bienvenu submitted to the Court the written response I had prepared to the scheduling questionnaire issued with the Court's Preliminary Conference Notice (filed May 12, 2000). True and correct copies of Mr. Bienvenu's cover letter and Liberty Mutual's response, which confirms in paragraph 5 Liberty Mutual's intention to amend its answer, are

2

attached hereto as Exhibit 1.

8.      On July 6, 2000, I once again confirmed Liberty Mutual's intention to amend its answer by joining DiLeo's counsel in filing an agreed motion for entry of a Rule 16 Scheduling Order that provided in paragraph 2 an October 6, 2000, deadline for motions to amend pleadings and/or to join new parties. A true and correct copy of that motion is attached hereto as Exhibit 2.

9.      On July 10, 2000, I served on DiLeo's counsel Liberty Mutual's promised responses to DiLeo's outstanding discovery requests. Because several of DiLeo's requests sought discovery of documents including confidential business proprietary information, I included with Liberty Mutual's responses a proposed Confidentiality Order and stated that Liberty Mutual would produce discoverable documents responsive to DiLeo's requests once the parties had negotiated and the Court had entered an appropriate order protecting their confidentiality. A true and correct copy of the packet of materials I served on DiLeo's counsel on July 10, 2000, is attached hereto as Exhibit 3.

10.     For six weeks after the service of Liberty Mutual's discovery responses on July 10, 2000, I heard nothing from DiLeo's counsel concerning any of the materials I sent to them on July 10. Then, on August 22, 2000, I received a letter from one of DiLeo's attorneys complaining that the July 10 responses were insufficient and that the proposed Confidentiality Order was unacceptable. A true and correct copy of that letter is attached hereto as Exhibit 4.

11.     Through a series of conference calls in the ten-day period from August 28, 2000, to September 6, 2000, DiLeo's counsel and I resolved all of DiLeo's objections to the proposed Confidentiality Order. Accordingly, I began producing documents responsive to DiLeo's discovery requests on September 6. A true and correct copy of the cover letter I sent with the first batch of documents on September 6, 2000, is attached hereto as Exhibit 5. A true and correct copy of the cover letter I sent with the second batch of documents on September 13, 2000, is attached hereto as

3

Exhibit 6.

12.     Among the documents I sent to DiLeo's counsel by Federal Express on September 6, 2000, were pages bearing Bates Numbers LIB000509-LIB000545, which I understood to be a copy of the insurance policy providing coverage for DiLeo's 1982 Porsche 928 in the period from January 20, 1996, to January 20, 1997. True and correct copies of those pages are attached hereto as Exhibit 7.

13.     Between the June 8 meeting of counsel and the October 6 deadline for moving for leave to add parties, DiLeo's counsel requested and took only one deposition in this case: that of Liberty Mutual's Brian Faucheaux. Attached hereto as Exhibit 8 are true and correct copies of pages 1-2, 4-6, 119-125, and 236 of the transcript of that deposition, as well as true and correct copies of Exhibits 4 and 5 to that deposition. Attached hereto as Exhibit 9 are true and correct copies of pages 1-4, 6, 47-57, and 163 of the transcript of DiLeo's deposition, as well as a true and correct copy of Exhibit D6 to that deposition.

14.     DiLeo's counsel have never served any requests for written discovery in this action other than the original discovery requests they served in state court in July 1999, six months before their attempt to covert this case into a class action. In particular, DiLeo's counsel have never served any requests for written discovery concerning the numerosity, commonality, typicality, and/or adequacy requirement(s) set forth in Rule 23(a). Nor have they served any requests for written discovery concerning the predominance and/or superiority requirement(s) stated in Rule 23(b)(3).

15.     One of DiLeo's lawyers, Steven Thompson, called me on October 5, 2000, and requested an extension of (a) the October 6 deadline for the parties to move for leave to amend their pleadings or to add new parties and (b) the October 6 deadline for DiLeo to disclose his class-certification experts, if any, in accordance with Rule 26(a)(2). Although I was willing to

4

accommodate Mr. Thompson as much as possible, I was not authorized to relinquish the advantage Liberty Mutual had achieved through DiLeo's failure to pursue discovery more diligently in the period from June 8 through October 5. Accordingly, I agreed to an extension of the October 6 deadline for the parties to move for leave to amend their pleadings and the October 6 deadline for DiLeo to disclose his class-certification experts, but I specifically refused to agree to an extension of the October 6 deadline for motions for leave to join new parties. A true and correct copy of the letter I sent to Mr. Thompson expressing the scope of my agreement is attached hereto as Exhibit 10.

16.    In the period from November 1, 2000, through December 21, 2000, I attempted on several occasions to persuade Mr. Thompson to agree to substitute Liberty Mutual Fire Insurance Company ("Liberty Fire") for Liberty Mutual as the defendant in this action and, thus, to avoid the delay and expense involved in litigating (a) the motion to strike DiLeo filed on November 21, 2000, and (b) the motion for leave DiLeo filed on December 22, 2000. Mr. Thompson never agreed to such a substitution.

17.    DiLeo's counsel have never offered in any oral or written communication with me to withdraw the motion to strike they filed on behalf of DiLeo on November 21, 2000.

18.    I have made and signed this declaration under penalty of perjury under the laws of the United States of America on January 16, 2001.

RUSSELL YAGER



## CERTIFICATE OF SERVICE

I hereby certify that, on this 16th day of January, 2001, I caused a true and correct copy of the Declaration of Russell Yager in Opposition to Plaintiff's Motion For Leave to File Amended Complaint For Class Certification And For Damages, Statutory Penalties And Attorneys' Fees to be served on the following counsel by first-class mail:

Keith P. Richards, Bar No. 22564
RICHARDS LAW FIRM, APLC
521 Europe Street
Baton Rouge, Louisiana 70802
Telephone: (225) 334-9222
Facsimile: (225) 334-9290

Steven C. Thompson, Bar No. 14469
MOORE, WALTERS & THOMPSON,
A PROFESSIONAL CORPORATION
6513 Perkins Road
Baton Rouge, Louisiana 70808
Telephone: (225)766-1100
Facsimile: (225) 767-4486

Richard C. Trahant, Bar No. 22653
808 North Causeway Boulevard
Metairie, Louisiana 70001
Telephone: (504) 831-4357
Facsimile: (504) 833-1329

Scott LaBarre, Bar No. 17659
GAUTHIER, DOWNING, LABARRE,
BEISER & DEAN
3500 North Hullen Street
Metairie, Louisiana 70002
Telephone: (504) 456-8600
Facsimile: (504) 456-8624

David J. Maraldo, Bar No. 24541
DAVID J. MARALDO,
A PROFESSIONAL LAW CORPORATION
4051 Veterans Blvd., Suite 208
Metairie, Louisiana 70002
Telephone: (504) 454-2769
Facsimile: (504) 454-3855

Keefe M. Bernstein

Dallas:444043.1

6

# SEE RECORD FOR
# EXHIBITS
# OR
# ATTACHMENTS
# NOT SCANNED