```
                                                      FILED
                                                  U.S. DISTRICT COURT
              UNITED STATES DISTRICT COURT       EASTERN DISTRICT OF LA
              EASTERN DISTRICT OF LOUISIANA
                                                   2001 JAN 23  PM 4: 32
```

DR. VINCENT DILEO, JR.                CIVIL ACTION
                                                      LORETTA G. WHYTE
                                      NUMBER: 00-0101       CLERK
VERSUS

                                      SECTION "S"- JUDGE LEMMON

LIBERTY MUTUAL INSURANCE COMPANY     MAGISTRATE WILKINSON

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO FILE AMENDED COMPLAINT FOR CLASS CERTIFICATION AND FOR DAMAGES, STATUTORY PENALTIES AND ATTORNEYS' FEES

**NOW COMES** Plaintiff, **DR. VINCENT DILEO, JR.**, individually, and as representative of a class of persons similarly situated, who submits this Reply Memorandum in support of his Motion for Leave to File Amended Complaint for Class Certification and for Damages, Statutory Penalties and Attorneys' Fees in accordance with Fed.R.Civ.P. 15:

DR. DILEO'S MOTION TO AMEND IS JUSTIFIED

LMIC's portrayal of the case's procedural history is far from complete. Conspicuous by its absence from LMIC's brief is any mention of the pleadings filed on its behalf in state district court, wherein LMIC failed to allege that it did not insure Dr. Dileo and filed an amended answer admitting liability to Dr. Dileo under Louisiana's insurer bad faith statutes. Therefore, Dr. Dileo had no reason to doubt that LMIC was his insurer when it subsequently made an unconditional tender to him and submitted the following November 29, 1999, response to the discovery requests which had been served LMIC with the July 29, 1999, original petition:

> **LIBERTY MUTUAL**, in its first supplemental and amending answer, **HAS ACKNOWLEDGED ITS OBLIGATION** to reimburse plaintiff for the NADA value of his vehicle and has stipulated that the failure to pay the claim of plaintiff within sixty days of proof of loss was without probable cause.

The foregoing response, which is attached to Steve Thompson's Declaration as Exhibit 6, is

Page -1-



noteworthy because Dr. Dileo had requested production of a copy of his insurance policy with LMIC. The insurer also filed with the state District Court a "memorandum in response" to Dr. Dileo's motion to compel (attached to Steve Thompson's Declaration as Exhibit 7) which provided, in pertinent part, as follows:

> Liberty Mutual Insurance Company opposes plaintiff's motion to compel on the basis of mootness. ***PLAINTIFF WAS INSURED UNDER A POLICY ISSUED BY LIBERTY MUTUAL WHICH INSURED PLAINTIFF'S VEHICLE FROM LOSS BY THEFT.***

Dr. Dileo received further information which would lead a reasonable person to believe that LMIC was his insurer ***after*** the removal of the court to this tribunal. Attached to Thompson's Declaration as Exhibit 1 are the July 10, 2000, responses from LMIC to the discovery requests propounded by Dr. Dileo some 300 days prior. Specific reference is made to LMIC's response to Dr. Dileo's Request for Production No. 5 seeking discovery of Dr. Dileo's insurance policy:

> Liberty [defined in the preface to the discovery responses by LMIC's counsel to refer to LMIC] objects to this request on the ground that it seeks information not relevant to the to the subject matter of this litigation or reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving its objections, ***LIBERTY STATES THAT IT WILL PRODUCE A COPY OF THE INSURANCE POLICY WHERE LIBERTY PROVIDED COVERAGE FOR THE PORSCHE AUTOMOBILE AT ISSUE IN THIS CASE FOR THE PERIOD FOR JANUARY 20, 1996, TO JANUARY 20, 1997.***
> (emphasis added).

Reading past the baseless objection which actually alleges that an insured's insurance policy has no relevance to his bad faith claims against his insurer, the response states in plain English that LMIC has an automobile insurance policy which provided coverage to Dr. Dileo at the time his automobile became a total loss. The foregoing discovery response by LMIC served to reinforce Dr. Dileo's belief that LMIC was his insurer.

The reasonableness of Dr. Dileo's belief that LMIC was his insurer is further bolstered by the transcript of the deposition of LMIC's Brian Faucheaux, who testified that he has been employed by "Liberty Mutual" for approximately 9½ years (pages 7-8); that he became personally involved

in Dr. Dileo's first party, total loss claim once litigation was commenced (pages 39-41); that members of the Special Investigative Unit of LMIC's Metairie Claims Office investigated Dr. Dileo's first party, total loss claim (pages 78-80); and, most importantly, Dr. Dileo was a "Liberty Mutual" insured (page 92). In fact, the testimony of LMIC's Brian Faucheaux on this issue is so important, it is reproduced herein:

BY MR. THOMPSON

> Q.  Let me ask you this question; Dr. Dileo was a Liberty Mutual insured, correct?
> A.  Yes, sir.
>
> Q.  You would consider this a first party claim, would you not?
> A.  It's a first party claim, yes sir.
>
> Q.  Sure.
> A.  Uh-huh.
>
> \* \* \* \* \*
>
> Q.  . . . Do you agree that Liberty Mutual had an obligation to its insured, Dr. Dileo, to make a determination about whether or not they were going to pay this claim and consider it a total loss? Do you agree with that? Do they have an obligation to him to make such a determination?
> A.  Sure. Yeah.

Clearly the foregoing would serve to reinforce Dr. Dileo's belief that LMIC was his insurer. Mr. Faucheaux's testimony did not put Dr. Dileo on notice that LMIC merely adjusted his claim for Liberty Mutual Fire Insurance Company. What is more, LMIC's counsel, who was present at Mr. Faucheaux's deposition, was endowed with a duty as an officer of this Honorable Court to correct any incorrect and/or misleading testimony being given by his client's employee. He did not.

While it is true that Dr. Dileo's counsel used the shorthand designation "Liberty Mutual" starting from page 7 of Mr. Faucheaux's deposition, it is likewise true that the witness embraced that designation and never distinguished between LMIC and any other Liberty Mutual Group affiliate. See, e.g., page 7 of the transcript where Mr. Faucheaux advises he has been employed by "Liberty Mutual" since 1991. In view of the July 10, 2000, discovery responses wherein LMIC's counsel

indicated that LMIC would produce a policy where LMIC provided coverage to Dr. Dileo and Mr. Faucheaux's prior use of "Liberty Mutual" to refer to LMIC, it was incumbent upon LMIC's counsel to clarify the testimony of LMIC's Brian Faucheaux if the witness referred to any Liberty Mutual Group company besides the lone defendant at the time, LMIC.

The crux of LMIC's argument that Dr. Dileo should not be afforded leave to amend his complaint is the fact that he received the insurance policy allegedly indicating that Liberty Mutual Fire Insurance Company, not Liberty Mutual Insurance Company, was his insurer before the deadline for adding parties. However, the policy was provided only 29 days before the deadline and was not accompanied by any indication that LMIC's July 10, 2000, response to document request number 5 was incorrect. Indeed, the document indicating a one word difference in the identity of Dr. Dileo's insurer on the declarations page was produced over 300 days after it was requested and after all of the following transpired:

1) LMIC filed two pleadings with the state district court indicating that it was liable unto Dr. Dileo for insurer bad faith,

2) LMIC responded to Dr. Dileo's discovery requests indicating that no material issue regarding liability remained between the parties (such a representation certainly implies that LMIC will not later allege that it was not Dr. Dileo's insurer),

3) LMIC responded to Dr. Dileo's document requests indicating that it will produce Dr. Dileo's automobile insurance policy where LMIC provided coverage for the stolen automobile,

4) LMIC submitted written discovery responses on July 10, 2000, which indicated both that Brian Faucheaux was an employee of LMIC and that certain LMIC employees had participated in the adjustment of Dr. Dileo's claim and

5) LMIC's Brian Faucheaux had testified that his employer was "Liberty Mutual" and that "Liberty Mutual" had insured Dr. Dileo, and "Liberty Mutual" adjusted Dr. Dileo's claim, which was considered a first party claim.

LMIC refers to gamesmanship and cynical efforts to hide the truth in its opposition memorandum to Dr. Dileo's motion to amend. However, the record is clear that it was only after the passing of

the deadline to add parties that LMIC's counsel attempted to amend LMIC's pleadings and thereby advised Dr. Dileo that Liberty Mutual Fire Insurance Company, not LMIC, issued the policy. See the November 9, 2000 correspondence from LMIC's counsel which is attached to Thompson's Declaration as Exhibit 3 and Thompson's November 10, 2000 response attached to the Decalration on Exhibit 4.

Moreover, LMIC's counsel waited until November 10, 2000 to amend the July 10, 2000 discovery responses to correct the response to document request number 5, which he apparently knew to be misleading when his client was testifying (before the deadline) about the policy. The "amended" discovery responses forwarded after the deadline for adding parties are attached hereto as Exhibit 6. If the supplemented discovery responses, which identify Liberty Mutual Fire Insurance Company as Dr. Dileo's insurer, would have been submitted by LMIC before the deadline for adding parties, then Liberty Mutual Fire Insurance Company would have been added as a party defendant before the deadline.

NUMEROSITY

LMIC makes much ado over the claim that Dileo had not yet completed discovery of the numerosity pertaining to Liberty Mutual Insurance Company prior to the deadline for adding parties. First of all, the deadline for fact discovery for class certification has not expired. Secondly, it was not critical to complete numerosity discovery with regard to Liberty Mutual Insurance Company prior to the deadline for adding parties, based upon the status of the case at the time of the deadline. As previously discussed, plaintiff believed that LMIC had issued the policy, based upon LMIC's multiple representations to that effect. Furthermore, LMIC was a party to the litigation. Dr. Dileo did not realize any relevance of Liberty Mutual Fire Insurance Company until after the deadline for adding parties had expired when LMIC amended its pleadings and all prior discovery responses to reveal for the first time that Liberty Mutual Fire Insurance Company issued the policy in question,

Page -5-

rather than LMIC. Accordingly, there was no reason to complete numerosity discovery with respect to LMIC before the deadline for adding parties expired.

Furthermore, numerosity does exist with respect to LMIC. LMIC handled, in bad faith, all of the claims under the policies issued by Liberty Mutual Fire Insurance Company. The proposed amendment does not focus on the number of policies issued by LMIC, but rather on those issued by Liberty Mutual Fire Insurance Company. As to LMIC, the proposed amendment makes it clear that its responsibility is for its adjusting, claim handling and/or payment of Liberty Mutual Fire Insurance Company claims. Hence, under the proposed amendment, the number of policies issued by LMIC is not the issue raised by the proposed amendment.

Finally, LMIC's makes a misleading assumption regarding the reason for the amendment to add Liberty Mutual Fire Insurance Company. Liberty Mutual Insurance Company, through its counsel Mr. Yager, has known from the first discussions following the revelation of Liberty Mutual Fire Insurance Company as the entity who it contends issued the policy to Mr. Dileo, that Dr. Dileo would seek leave of court to add Liberty Mutual Fire Insurance Company as a defendant. The only question was whether or not Dr. Dileo would agree to simply substitute Liberty Mutual Fire Insurance Company as a defendant for LMIC instead of adding it. See Declaration of Steven C. Thompson, paragraphs 10-15.

Dr. Dileo did informally request information regarding numerosity of Liberty Mutual Fire Insurance Company, but that was simply to evaluate whether it would be simply substituted as a defendant as opposed to added as a defendant. Mr. Yager did offer to consent to the addition of Liberty Mutual Fire Insurance Company as a defendant, and consented to have it relate back to the original filing, but only on the condition that Liberty Mutual Insurance Company be dismissed in an effort by Liberty Mutual Insurance Company to avoid admissions made by it after thoroughly investigating Dr. Dileo's claim for two years prior to admitting coverage. Dr. Dileo ultimately

decided not to delete Liberty Mutual Insurance Company as a party, insofar as its employees are responsible for the bad faith handling of Dr. Dileo's claim, insofar as Liberty Mutual Insurance Company actually paid the claim in question, and insofar as Liberty Mutual Insurance Company's employees are the ones who undertake to systematically use CCC and ADP to evaluate total loss claims, albeit (in this case) under policies originally issued by Liberty Mutual Fire Insurance Company. See Declaration of Thompson, paragraphs 10-15.

THE PROPOSED AMENDMENTS ARE NOT FUTILE

Despite the defendant's protestations to the contrary, the proposed amended complaint of Dileo would not be futile. The proposed amended complaint attempts to clarify (based on recent revelations) that Liberty Mutual Fire Insurance Company, rather than Liberty Mutual Insurance Company, issued the policies in question. The amended complaint restates the cause of action originally set forth against Liberty Mutual Insurance Company against Liberty Mutual Fire Insurance Company as the issuer of the policies in question. The complaint also restates the allegations against Liberty Mutual Insurance Company as it pertains to their bad faith handling of the claims and their systematic use of CCC and ADP to under value total loss claims on policies issued by Liberty Mutual Fire Insurance Company.

LMIC argues that it is not an "insurer" within the meaning of La. R.S. 22:1212. That issue is the subject of a separate motion for summary judgment filed by Liberty Mutual Insurance Company which has been responded to by plaintiffs in a separate opposition memorandum. Suffice it to say for now, Dr. Dileo dealt solely with LMIC employees regarding the investigation, evaluation and dispute of his claim. Additionally, LMIC unconditionally tendered a portion of Dr. Dileo's claimed losses (they did not unconditionally tender damages for their bad faith handling of the claim), and LMIC is the party who systematically handles all Liberty Mutual Fire Insurance Company's claims in Louisiana. It is difficult to imagine that Liberty Mutual Insurance Company

would not be a proper party defendant in a claim challenging the claims handling practices that Liberty Mutual Insurance Company employed when handling claims of Liberty Mutual Fire Insurance Company's policyholders.

Although LMIC contends that it is not solidarily liable for Liberty Mutual Fire Insurance Company based on the code article cited, Liberty Mutual Insurance Company omitted to reference La.C.C. Art. 1797, which makes clear that an obligation can be solidary even though it derives from a different source for each obligor.

Finally, Liberty Mutual Insurance Company contends that Dileo cannot maintain a claim against it based on its withdrawn admissions. Of course, those withdrawn admissions are the subject of the corresponding motion to strike which has been briefed by both parties. Furthermore, even were the court to allow LMIC to withdraw some of the judicial admissions it made, it does not follow that evidence of the manner in which LMIC under valued Dr. Dileo's claim, waited until he filed suit to tender the proper amount owed by Dr. Dileo, and then conceded he was entitled to NADA value would not be admissible.

LMIC also claims that Mr. Dileo's claims are moot and he therefore lacks standing to represent the proposed class. This argument is invalid for several reasons. First, LMIC has not in fact paid Mr. DiLeo for all of his damages arising out of its arbitrary and capricious, bad faith, failure to timely pay his claim. Even though LMIC paid the base NADA value of his vehicle minus the deductible after he was forced to sue them, as LMIC did not pay the entirety of Mr. DiLeo's damages. Mr. DiLeo would still have intact his claim for damages caused by the bad faith failure of Liberty Mutual to timely settle his claim in an appropriate amount. A case may be dismissed under the "mootness" doctrine espoused by Liberty Mutual only if (a) it is resolved as to *all* proposed class members and therefore is no longer "live"; or if (b) it is so completely resolved as to the named claimant that *he no longer has any personal stake in the case* and, therefore, there is

no longer a pending "case or controversy" before the Court to resolve. United States Parole Commission v. Geraghty, 445 U.S. 388, 396-98, 100 S.Ct. 1202, 1208-09 (1980). Here, the mere belated payment by Liberty Mutual of the vehicle's NADA value, after its bad faith failure to resolve the claim timely and its arbitrary and capricious acts in settling the claim, did not eliminate Mr. Dileo's personal stake in the case; Mr. Dileo still has claims for bad faith damages that has not been resolved, and his case is therefore not moot.[1]

Furthermore, where a claim is capable of repetition, yet evading review, the general requirement that the named Plaintiff retain a personal stake in the litigation as of the time the Court rules on class certification is no longer applicable. In such a case, the Court may accept jurisdiction even if the named plaintiff loses his personal stake in the action after the filing of the Petition but before the purported class is certified. See, e.g., Sosna v. Iowa, 419 U.S. 393, 402, 95 S.Ct. 553, 559 (1975); United States Parole Commission v. Geraghty, supra, 445 U.S. at 397-398, 100 S.Ct. 1202, 1209-1210. If Liberty Mutual has its way, it can continue wrongfully refusing in bad faith to pay the actual cash value of totaled vehicles, force the claimants to file suit after running out of patience, and then, before a class action can be sought, suddenly pay off a portion of the named plaintiff's claim (i.e. the fair market value originally demanded), and never be truly called to task for its bad faith practices in a class action. This is the quintessential situation contemplated within the "capable of repetition, yet evading review" exception.

Finally, LMIC maintains that Dr. Dileo's individual and representative claims against Liberty Mutual Fire Insurance Company are exclusively governed, and rejected, by a 1974 administrative pronouncement of the Louisiana Department of Insurance known as Directive 18. In

---

[1] Liberty Mutual has not cited a case that allows for the dismissal of a class action because *a part* of the named plaintiff's claim was paid by the defendant after suit was filed but before the class was certified.

Page -9-

fact, however, Dr. Dileo's claims against LMIC and Liberty Mutual Fire Insurance Company are not completely premised upon the failure to tender the NADA *Official Used Car Guide* value of a total loss vehicle. Rather, Dr. Dileo has asserted that the exclusive use of vehicles appraisals completed by CCC and/or ADP Autosource by LMIC and Liberty Mutual Fire Insurance Company constitute bad faith. Moreover, Dr. Dileo asserts that the failure of LMIC and Liberty Mutual Fire Insurance Company to tender the NADA value of total loss vehicles to all first party claimants after LMIC admitted that Dr. Dileo was due the NADA value of his vehicle is definitional bad faith.

Furthermore, Directive 18 does not preclude use of the NADA value, but simply states that other factors should be considered when a claimant disputes the NADA *Official Used Car Guide* value. At any rate, Directive 18 is no longer authoritative because of the subsequent enactment of La. R.S. 32:702 (which defines "total loss" by reference to the NADA *Official Used Car Guide*) and two recent decisions of the Louisiana Supreme Court. In *State Farm Mutual Automobile Insurance Company v. Berthelot,* 98-1011 (La. 4/13/99); 732 So.2d 1230, the court expressed its belief that the NADA *Official Used Car Guide* establishes the actual value for vehicles. Moreover, very recently the Louisiana Supreme Court denied the application for review made by Allstate Insurance Company in *Hayes v. Allstate Insurance Company,* 99-1558 (La. App. 3 Cir. 3/1/00), 758 So.2d 900, *writ denied* 2000-C-1587 (La. 8/31/00), 2000 WL 1260198, upholding the Third Circuit's award to the Plaintiff of the NADA value for her "total loss" vehicle. The insurer valuated the vehicle using the appraisal submitted by CCC.

For the purposes of the instant motion, it is clear that when Plaintiff alleges, as he did an entitlement to damages, bad faith penalties and attorney's fees for LMIC's refusal to tender the NADA *Official Used Car Guide* value for insureds' "total loss" vehicles in accordance with the terms of Liberty Mutual Fire Insurance Company's policies, he states a claim upon which relief may be granted.

CONCLUSION

For each and every one of the foregoing reasons, Plaintiff-Mover, **DR. VINCENT DILEO, JR.,** individually, and as representative of a class of persons similarly situated, prays this Honorable Court will grant his Motion for Leave to File Amended Complaint for Class Certification and for Damages, Statutory Penalties and Attorneys' Fees.

Respectfully submitted by:

_____
Keith P. Richards (LSBA #22564)
**RICHARDS LAW FIRM, APLC**
521 Europe Street
Baton Rouge, Louisiana 70802
Telephone:(225) 334-9222

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading and the Declaration of Steven C. Thompson with all exhibits thereto has this day been forwarded to the following counsel of record:

| | |
|---|---|
| Russel Yager (Via Fax and U.S. Mail) | W. Shelby McKenzie (via hand delivery) |
| **VINSON & ELKINS, L.L.P.** | **TAYLOR, PORTER, BROOKS, PHILLIPS** |
| 3700 Trammell Crow Center | P.O. Box 2471 |
| 2001 Ross Avenue | Baton Rouge, LA 70821 |
| Dallas, TX 75201 | |

Baton Rouge, Louisiana, this _____ day of January, 2001.

_____
Keith P. Richards

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DR. VINCENT DILEO, JR.<br>    Plaintiff | CIVIL ACTION |
| | NUMBER: 00-0101 |
| VERSUS | |
| | SECTION "S"- JUDGE LEMMON |
| LIBERTY MUTUAL INSURANCE CO.<br>    Defendant | MAGISTRATE WILKINSON |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### DECLARATION OF STEVE C. THOMPSON IN REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR LEAVE TO FILED SECOND AMENDED COMPLAINT

1. My name is Steven C. Thompson. I am over 21 years of age. I have never been convicted of a felony. I have personal knowledge of the facts stated in this declaration. All of the statements of fact contained in this declaration are true.

2. I am an attorney admitted to practice law in all of the courts of the State of Louisiana, as well as in the United States District Courts for Louisiana, including the Eastern District.

3. I am a partner in the law firm of Moore, Walters & Thompson and, in that capacity, I serve as co-counsel to Dr. Vincent Dileo, Jr., in the above captioned action.

4. At no time prior to Liberty Mutual Insurance Company attempting to file an amended answer on October 20, 2000 did Liberty Mutual Insurance Company, through its attorney, Russell Yager, or otherwise, ever advise Dr. Dileo, through me as counsel to Dr. Dileo, that it intended to amend pleadings to claim that Liberty Mutual <u>Fire</u> Insurance Company, rather than Liberty Mutual Insurance Company, had issued the policy to Dr. Dileo.

1

5. In fact, at no time prior to October 20, 2000, had Mr. Yager or any other counsel representing Liberty Mutual Insurance Company ever communicated to Dr. Dileo through undersigned counsel that Liberty Mutual Fire Insurance Company had issued the policy in question to Dr. Dileo. Liberty Mutual, through its attorney Russell Yager, did indicate in written response to Requests for Production of Documents, specifically response number 5 to the Request for Production of Documents, that Liberty Mutual Insurance Company would produce Liberty Mutual Insurance Company's policy which provided coverage to Dr. Dileo. When the policy was subsequently produced, I naturally believed, consistent with both the written response correlating to the document production and the multiple prior admissions by LMIC, that it was in fact Liberty Mutual Insurance Company's policy as referred to in the written response which corresponded to the production of the policy.

6. A true and correct copy of the July 10, 2000 written response to the Request for Production of Documents, including Response No. 5, is attached as Exhibit 1 hereto.

7. After debating with Mr. Yager over what I considered to be an extremely overly broad confidentiality order, I requested him on more than one occasion to produce the documents which he was not claiming to be subject to the confidentiality order. That production was received on or after September 7, 2000.

8. Counsel for Liberty Mutual attached only select pages of the transcript of the deposition of Brian Faucheaux, which deletes important information on the subject motion. Attached as Exhibit

2

2 hereto are true and correct copies of pages 1-4,7-17,37-41,78-80,and 92-99 of the transcript of the deposition of Brian Faucheaux.

    9. When I spoke to Mr. Yager on October 5, 2000 about the October 6, 2000 deadline, I advised him that I believed that one of the reasons necessary for the extension was the delay in receiving the responses to discovery. Initially, Mr. Yager refused to agree to the extension of any deadlines unless we agreed to allow him to withdraw certain admissions made by Liberty Mutual Insurance Company. Once again, he never indicated that any of his reasons for wanting to amend Liberty Mutual's Insurance Company's pleadings or to withdraw admissions included any assertion that someone other than Liberty Mutual Insurance Company had issued the policy in question to Dr. Dileo. In fact, at one point he was concluding that his desire to amend centered on the facts he intended to dispute through a handwriting expert. When I advised him that we were going to file a Motion with the court to amend the scheduling order, he agreed to a change in the scheduling order provided that the date for adding new parties not be extended. I discussed this with other co-counsel of Dr. Dileo and we agreed to the new scheduling order because we did not believe at the time that any new parties needed to be added, as we did not realize that Liberty Mutual Insurance Company would later claim that someone other than itself had issued the policy to Dr. Dileo.

    10. Mr. Yager indicates in paragraph 16 of his Declaration that, from November 1, 2000 through December 21, 2000, he attempted

to persuade me to agree to substitute Liberty Mutual Fire Insurance Company for Liberty Mutual. In fact, from at least November 1, 2000 through December 21, 2000 (beginning in the first conversation we had following October 20, 2000), I had several conversations with Mr. Yager wherein he attempted to persuade me to substitute Liberty Mutual Fire Insurance Company for Liberty Mutual Insurance Company instead of simply adding Liberty Fire to the case. I consistently advised Mr. Yager, beginning in our very first conversation following his belated revelation in the October 20, 2000 motion to amend his answer, that we would be seeking leave of court to add Liberty Mutual Fire Insurance Company as a defendant, but that we wanted some information on the relationship between Liberty Mutual Insurance Company and Liberty Mutual Fire Insurance Company prior to making the amendment. Mr. Yager requested that I allow him to provide me certain information informally to that end and requested that we not do formal discovery on that until he had an opportunity to satisfy my request informally, as he was trying to persuade me to substitute Liberty Mutual Fire Insurance Company, rather than add them.

11. I did write Mr. Yager a letter on November 10, 2000 after receiving the enclosed November 9 letter from him wherein he attempted to withdraw certain admissions. In the letter to him, I requested the identity of individuals who could attest to the relationship of the various Liberty Mutual parties.

12. A true and correct copy of Mr. Yager's November 9, 2000 letter and my November 10, 2000 response are attached as Exhibits

4

3 and 4 hereto.

13. In discussions with Mr. Yager between November 1, 2000 and December 20, 2000, I specifically asked Mr. Yager numerosity questions concerning Liberty Mutual Fire Insurance Company (not Liberty Mutual Insurance Company, who is already a defendant) and about the relationships between Liberty Mutual Fire Insurance Company and Liberty Mutual Insurance Company.

14. Mr. Yager did offer to consent to a substitution of Liberty Mutual Fire Insurance Company for Liberty Mutual Insurance Company, relating back to the original filing date, but only on the condition that Liberty Mutual Insurance Company be dismissed.

15. On December 5, 2000, Mr. Yager presented me with a copy of a declaration of James Pugh regarding some information concerning Liberty Mutual Insurance Company. Mr. Yager also advised me verbally that Liberty Mutual Fire Insurance Company had a large number of policyholders in Louisiana (I do not recall the specific number).

16. I have attached as Exhibit 5 hereto, a true and correct copy of a document entitled "LIBERTY'S AMENDED RESPONSE TO PLAINTIFFS INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS", along with the transmittal letter with a mailing date of November 10, 2000.

17. I have attached as exhibits 6 and 7 hereto, true and correct copies of Liberty Mutual Insurance Company's "Responses to Interrogatories and Requests for Production of Documents" and

"Memorandum in Response to Plaintiff's Motion To Compel" both dated November 29, 1999.

    18.  I have made and signed this declaration under penalty of perjury under the laws of the United States of America on January 22, 2001.

_____
Steve C. Thompson

**SEE RECORD FOR EXHIBITS OR ATTACHMENTS NOT SCANNED**