

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 FEB 28  AM 11: 28

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DR. VINCENT DILEO, JR., | § | CIVIL ACTION |
| | § | |
| Plaintiff, | § | NO. 00-0101 |
| | § | |
| VS. | § | SECTION: "S" (2) |
| | § | |
| LIBERTY MUTUAL INSURANCE | § | UNITED STATES DISTRICT |
| COMPANY, et al., | § | JUDGE MARY ANN VIAL LEMMON |
| | § | |
| Defendants. | § | MAGISTRATE JOSEPH C. WILKINSON, JR. |

**DEFENDANTS' MOTION TO DISMISS
DILEO'S VALUATION CLAIMS FOR LACK OF JUSTICIABILITY**

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, Defendants Liberty Mutual

Insurance Company ("Liberty Mutual") and Liberty Mutual Fire Insurance Company ("Liberty Fire")

respectfully move to dismiss all of the claims asserted in the Second Amended Complaint for Class

Certification and for Damages, Statutory Penalties and Attorneys' Fees (filed Jan. 25, 2001), save

and except DiLeo's individual claim for statutory damages under La. R.S. 22:1220 for Liberty Fire's

alleged failure to pay the undisputed potion of his total loss claim within sixty days after written

___ fee ___
___ Process ___
X  Dktd ___
✓ CtRmDep ___
Doc. No. 42

demand. For the reasons stated in Defendants' Memorandum in Support of Their Motion to Dismiss

DiLeo's Valuation Claims for Lack of Justiciability the Court should grant this motion.

February, 27, 2001                                    Respectfully submitted,

W. Shelby McKenzie, No. 10020
David M. Bienvenu, Jr., No. 20700
TAYLOR, PORTER, BROOKS
& PHILLIPS, L.L.P.
451 Florida Street, 8th Floor
P.O. Box 2471
Baton Rouge, LA 70821
Telephone: (225) 387-3221
Facsimile: (225) 346-8049

Judy Y. Barrasso, No. 2814
Meredith A. Cunningham, No. 26465
STONE, PIGMAN, WALTHER, WITTMAN
& HUTCHINSON, L.L.P.
546 Carondelet Street
New Orleans, LA 70130-3588
Telephone: (504) 581-3200
Facsimile: (504) 581-3361

Robert C. Walters
Russell Yager
Keefe M. Bernstein
VINSON & ELKINS L.L.P.
3700 Trammell Crow Center
2001 Ross Avenue
Dallas, Texas 75201
Telephone: (214) 220-7700
Telecopy: (214) 999-7716

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that, on this 27th day of February, 2001, I caused a true and correct copy of Defendants' Motion to Dismiss DiLeo's Valuation Claims for Lack of Justiciability to be served on the following counsel via facsimile and first class mail:

Scott LaBarre, Bar No. 17659
GAUTHIER, DOWNING, LABARRE,
BEISER & DEAN
3500 North Hullen Street
Metairie, Louisiana 70002
Telephone: (504) 456-8600
Facsimile: (504) 456-8624

Keith P. Richards, Bar No. 22564
RICHARDS LAW FIRM, APLC
521 Europe Street
Baton Rouge, Louisiana 70802
Telephone: (225) 334-9222
Facsimile: (225) 334-9290

Richard C. Trahant, Bar No. 22653
808 North Causeway Boulevard
Metairie, Louisiana 70001
Telephone: (504) 831-4357
Facsimile: (504) 833-1329

Steven C. Thompson, Bar No. 14469
MOORE, WALTERS & THOMPSON,
A PROFESSIONAL CORPORATION
6513 Perkins Road
Baton Rouge, Louisiana 70808
Telephone: (225)766-1100
Facsimile: (225) 767-4486

David J. Maraldo, Bar No. 24541
DAVID J. MARALDO,
A PROFESSIONAL LAW
CORPORATION
4051 Veterans Blvd., Suite 208
Metairie, Louisiana 70002
Telephone: (504) 454-2769
Facsimile: (504) 454-3855

Dallas 450621 1

3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DR. VINCENT DILEO, JR., | § | CIVIL ACTION |
| | § | |
| Plaintiff, | § | NO. 00-0101 |
| | § | |
| VS. | § | SECTION: "S" (2) |
| | § | |
| LIBERTY MUTUAL INSURANCE | § | UNITED STATES DISTRICT JUDGE |
| COMPANY, et al., | § | MARY ANN VIAL LEMMON |
| | § | |
| Defendants. | § | MAGISTRATE JOSEPH C. WILKINSON, JR. |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS
DILEO'S VALUATION CLAIMS FOR LACK OF JUSTICIABILITY**

On January 25, 2001, Plaintiff Vincent DiLeo, Jr., ("DiLeo") filed a second amended
complaint alleging, *inter alia*, that Defendants Liberty Mutual Insurance Company ("Liberty
Mutual") and Liberty Mutual Fire Insurance Company ("Liberty Fire") are liable to the members of
a putative class of Liberty Fire policyholders for improperly using the ADP and CCC computerized
valuation systems rather than NADA guidebooks to calculate the "actual cash values" of "total loss"
vehicles. *See* Second Amended Complaint for Class Certification and for Damages, Statutory
Penalties and Attorneys' Fees at ¶¶ 20-42 (filed Jan. 25, 2001) ("Second Amended Complaint"). For
the reasons stated below, the Court should dismiss those allegations for lack of justiciability.

## I.    SUMMARY OF THE GROUNDS FOR THIS MOTION.

DiLeo's Second Amended Complaint asserts two types of claims. First, it asserts "timing" claims arising from Liberty Fire's alleged failure to tender the undisputed amount of DiLeo's "total loss" claim within sixty days after written demand. Second, it asserts "valuation" claims arising from Defendants' alleged use of ADP and CCC computerized valuation systems rather than NADA guidebooks to calculate the "actual cash values" of certain "total loss" vehicles.

Importantly, though, the Second Amended Complaint asserts its timing claims only on behalf of DiLeo, individually. Indeed, DiLeo has no Rule 11 basis for alleging that Liberty Fire failed to pay the undisputed portions of other policyholders' claims within sixty days after written demand. On the other hand, the Second Amended Complaint asserts its valuation claims both on behalf of DiLeo, individually, and on behalf of a putative class of Liberty Fire policyholders.

As demonstrated below, however, DiLeo's valuation claims–the only claims he asserts on behalf of the putative class–are not justiciable, because (1) the Second Amended Complaint fails to allege a redressable injury giving DiLeo standing to press those claims, (2) DiLeo's individual valuation claim became moot when he received the claimed NADA retail value of his Porsche, less his $500 deductible, fifteen days before he attempted to convert this case to a putative class action, and (3) DiLeo's individual timing claim–that Liberty Fire improperly failed to pay the undisputed portion of his total loss claim within sixty days after written demand–does not give him a personal stake in the valuation claims he seeks to assert on behalf of the putative class. Further, the law is clear that the absence of a justiciable controversy regarding DiLeo's valuation claims requires their dismissal. Other conceivable options, such as allowing another class member to become the class representative or denying class certification under Rule 23, are improper.

## II.    FACTUAL AND PROCEDURAL BACKGROUND.

This action arises from a claim under a automobile policy Liberty Fire issued to DiLeo for the period from January 20, 1996, to January 20, 1997. *See* Affidavit of Benjamin Jones, III at ¶3 & Ex. A (the "Jones Affidavit").[1]  On June 5, 1997, DiLeo reported that his 1982 Porsche 928 had been stolen.  *See* Deposition of Brian Faucheaux at 75-78, 82-83 & Ex. 1, pp. LIB000005-LIB000007 ("Faucheaux Depo.").[2]  Thereafter, Liberty Mutual employees who provide claims services to Liberty Fire policyholders attempted to recover the Porsche for DiLeo. *See id.* at Ex. 1, pp. LIB000006-LIB000020.  Then, on or around April 1, 1999, DiLeo informed a Liberty Mutual employee named Ilette Surtain that he wanted to make a claim under his auto policy for the value of the Porsche. *See id.* at Ex. 1, p. LIB000050.

On April 5, 1999, Surtain contacted DiLeo by telephone and offered him a total of $7,841.13 for his total loss claim, reflecting an actual cash value for the Porsche of $8,341.13 minus DiLeo's $500.00 deductible. *See id.* at Ex. 1, p. LIB000052.  Although DiLeo expressed disappointment with the $7,841.13 figure, he told Surtain that he would accept the offer. *See id.*  Thereafter, on April 12, 1999, another Liberty Mutual employee named Sandra Kennedy ("Kennedy") sent DiLeo a confirming letter that promised to send DiLeo a check for $7,841.13 once DiLeo executed and returned a release she enclosed with the letter. *See id.* at Ex. 1, p. LIB000054.

When Kennedy did not receive the requested release by April 23, 1999, she sent DiLeo another letter, reminding him that she would forward the $7,841.13 payment once he returned the

---

[1] The Affidavit of Benjamin Jones, III, as well as its exhibits, appear in the record behind Tab 2 of the Appendix to (1) Defendant's Memorandum in Opposition to Plaintiff's Motion to Strike and (2) Defendant's Motion for Summary Judgment (filed Dec. 12, 2000) (the "Appendix").

[2] The relevant pages of—and the relevant exhibits to—the Faucheaux Deposition are attached as Exhibit D to the Declaration of Keefe Michael Bernstein, which is included in the record behind Tab 1 of the Appendix.

release. *See id.* at Ex. 1, p. LIB000053. Then, on May 24, 1999, Kennedy received a May 21, 1999,

letter from David J. Maraldo, Esq. ("Maraldo"), stating that he was representing DiLeo in connection

with his claim, rejecting the $7,841.13 DiLeo had agreed to accept on April 12, 1999, asserting that

the vehicle in question was a 1983 Porsche 928S rather than a 1982 Porsche 928, and demanding

$17,355.00 for its loss. *See* Deposition of Vincent DiLeo, Jr. at 119-126 & Ex. 14 ("DiLeo Depo.").[3]

On July 29, 1999, Maraldo followed up his May 21 demand by filing this action. *See* Petition

for Damages (filed July 29, 1999) ("Original Petition"). The Original Petition alleged that DiLeo

owned a 1983 Porsche 928S, that Liberty Mutual insured the Porsche, that the Porsche was stolen,

that the value of the Porsche at the time of its theft, as established by the "bluebook" published by

the National Automobile Dealers Association ("NADA"), was $17,355.00, that Liberty Mutual had

offered to pay DiLeo only $7,841.13 for the loss of the Porsche, that Liberty Mutual breached the

terms of DiLeo's insurance policy by failing to pay DiLeo $17,355.00, less his policy's $500.00

deductible, for the loss of his Porsche, and that Liberty Mutual also violated La. R.S. 22:658 and La.

R.S. 22:1220 by failing to pay DiLeo the undisputed sum of $7,841.13 on or before July 21, 1999.

*See id.* at ¶¶ III-VI, XV-XXII. The Original Petition made no class-action allegations.

Recognizing that, through inadvertence, the $7,841.13 Surtain and Kennedy offered DiLeo

in April, 1999, had not in fact been paid within sixty days after Maraldo's written demand of

May 21, 1999, one of Liberty Mutual's claims managers, Brian Faucheaux, and one of its attorneys,

David Bienvenu, Jr., attempted to negotiate a settlement with Maraldo. *See* Faucheaux Depo. at 84-

88, 105-108, 176-177 & Exs. 2, 3, 8, 9; *see also* DiLeo Depo. at 127-134 & Exs. D-15, D-16, D-17.

In the course of those negotiations, Maraldo conceded that DiLeo's vehicle was not a 1983 Porsche

---

[3] The relevant pages of—and the relevant exhibits to—the DiLeo Deposition are attached as Exhibit E to the Declaration of Keefe Michael Bernstein, which is included in the record behind Tab 1 of the Appendix.

928S with an NADA retail value of $17,355.00, as asserted in his demand letter and in DiLeo's Original Petition and stated instead that it was a 1982 Porsche 928 with an NADA retail value of $13,700.00. *See* DiLeo Depo. at 119-132 & Ex. D-2, D-14, D-15, D-16, D-17.

In response, Faucheaux offered to settle this action by paying DiLeo a total of $21,640.00, including the claimed $13,700.00 NADA retail value of his Porsche, less his $500.00 deductible, plus a 10% penalty of $1,320.00 under La. R.S. 22:658, attorneys' fees of $2,000.00 under La. R.S. 22:658, and $5,000.00 as a reimbursement of premiums and a payment for DiLeo's potential recovery under La. R.S. 22:1220. *See* Faucheaux Depo. at 105-108 & Ex. 3. Surprisingly, Maraldo rejected Faucheaux's $21,640.00 offer and increased DiLeo's settlement demand to $49,999.00.

Understandably frustrated, Faucheaux authorized Bienvenu to tender a check to Maraldo on November 29, 1999, paying DiLeo and Maraldo a total of $18,951.04, including the claimed $13,700.00 NADA retail value of DiLeo's Porsche, less his $500.00 deductible, plus a 10% penalty of $1,320.00 under La. R.S. 22:658, attorneys' fees of $2,000.00 under La. R.S. 22:658, $311.04 in legal interest under La. R.S. 22:658, $120.00 in court costs under La. R.S. 22:658, and $2,000.00 as a reimbursement of premiums. *See id.* at 173-176 & Ex. 7; *see also* Plaintiff's Memorandum in Support of Motion to Strike Pursuant to Rule 12(f) at 7 (filed Nov. 21, 2000) (stating "Liberty Mutual has already paid Dr. DiLeo . . . the NADA value of his vehicle (less his deductible), penalties for arbitrary conduct under La. R.S. 22:658 and attorney's fees") ("Plaintiff's Memorandum").[4]

DiLeo and Maraldo received the $18,951.04 tender on November 30, 1999, and cashed the check on or before December 1, 1999. *See* Plaintiff's Reply Memorandum in Support of Motion to Strike at 1 & n.1 (filed Jan. 22, 2001) (stating "Liberty Mutual . . . tendered funds on [DiLeo's] claim

---

[4]The tender did not include any amount for statutory damages under La. R.S. 22:1220, because DiLeo had not articulated any basis for concluding that the delay in paying his total loss claim caused him any pecuniary loss. *See* Faucheaux Depo. at 173-76 & Ex. 7, p. 2.

on November 30, 1999") ("Plaintiff's Reply"); *see also* Affidavit of Robert G. Foley at 2 & Ex. D (showing that DiLeo and Maraldo endorsed the check and presented it for payment on or before December 1, 1999).[5] Nevertheless, they refused to dismiss any portion of this lawsuit.

Instead, they escalated the dispute on December 15, 1999, by filing a supplemental and amended petition seeking certification of a putative plaintiff class consisting of every person who was "issued a policy of automobile insurance by Liberty Mutual Insurance Company and whose vehicle was deemed a total loss by Liberty Mutual due to theft, accident, or otherwise and who has been compensated [for such loss] pursuant to . . . [a] . . . computerized valuation program" rather than an National Automobile Dealers Association ("NADA") handbook. *See* Supplemental and Amended Petition at ¶¶ II-VII (filed Dec. 15, 1999). Paragraph III of that petition alleged that "each member of the [putative] class . . . is entitled to receive compensation for the total loss of their [sic] vehicle in an amount pursuant to the pertinent National Automobile Dealers Association Handbook." *Id.* at ¶ III.

After Liberty Mutual removed this case to federal court, DiLeo sought and obtained leave to file two further pleadings: (1) an Amended Complaint for Class Certification and for Damages, Statutory Penalties and Attorneys' Fees filed on October 24, 2000 (the "First Amended Complaint") and (2) a Second Amended Complaint for Class Certification and for Damages, Statutory Penalties and Attorneys' Fees filed on January 25, 2001 (the "Second Amended Complaint"). The Second Amended Complaint, which is the first pleading to name Liberty Fire as a defendant, requests certification of a putative class including:

> Any person who was issued or otherwise covered by a policy of automobile insurance in Louisiana by Liberty Mutual Fire Insurance Company whose vehicle was deemed a "total loss" after claims adjustment by either Liberty Mutual Fire Insurance

---

[5]The Affidavit of Robert G. Foley appears in the record behind Tab 5 of the Appendix.

Company or Liberty Mutual Insurance Company within ten years of December 15, 1999, and whose vehicle's "actual cash value" was determined by either Liberty Mutual Fire Insurance Company or Liberty Mutual Insurance Company by reference to CCC Information Services Group, Inc. or ADP Claims Solutions Group, Inc. and was paid or has been offered an amount for the "total loss" vehicle by Liberty Mutual Fire Insurance Company or Liberty Mutual Insurance Company which was determined by CCC Information Services Group, Inc. or ADP Claims Solutions Group, Inc.

Second Amended Complaint at ¶ 4. Paragraphs 23 through 26 of the Second Amended Complaint allege that each member of the putative class is entitled to the NADA retail value for his or her "total loss" vehicle. *See id.* at ¶¶ 23, 24, 25, 26.

## III.    ARGUMENT: THE COURT SHOULD DISMISS DILEO'S VALUATION CLAIMS.

Importantly, though, this Court lacks Article III power to adjudicate DiLeo's claim that each member of the putative class is entitled to the NADA retail value for his or her "total loss" vehicle.

### A.    Article III Requires a Class Representative to Demonstrate a Personal Stake in His Class Claims at the Time He Moves for Class Certification.

The "case or controversy" requirement of Article III is a threshold prerequisite to any exercise of judicial power by a federal court. *See Rocky v. King*, 900 F.2d 864, 866 (5th Cir. 1990) (noting that, as a threshold question, a federal court must decide whether the plaintiff's complaint presents a justiciable controversy). Thus, the standing of the named plaintiff is a "threshold inquiry" in a class action, just as in any other lawsuit. *See Brown v. Sibley*, 650 F.2d 760, 771 (5th Cir. 1981) (holding that "individual standing requirements constitute a threshold inquiry" in class actions). Further, Article III requires that a named plaintiff have standing not only at the time he files his putative class action, but also at the time he moves for class certification. *See Rocky*, 900 F.2d at 866 ("The [Article III] mootness doctrine requires that the controversy posed by the plaintiff's complaint be 'live' not only at the time the plaintiff files the complaint but also throughout the litigation process.").

7

Like any other plaintiff, a would-be class representative can establish his standing to sue only by alleging that he suffered an injury that is fairly traceable to the challenged conduct of the defendant and likely to be redressed by the relief he requests. *See Trinity Indus., Inc. v. Martin*, 963 F.2d 795, 798 (5th Cir. 1992).[6] And, like any other plaintiff, a would-be class representative must plead each of these three elements–injury, causation, and redressability–in his complaint. *Id.* at 798; *see also Gabrielsen v. BancTexas Group, Inc.*, 675 F. Supp 367, 369 (N.D. Tex. 1987) ("Standing is a preliminary matter to be evaluated upon the allegations of the complaint.").[7] Article III standing cannot be predicated on any defense or counterclaim, whether already asserted or merely anticipated. *See International Video Corp. v. Ampex Corp.*, 484 F.2d 634, 636 (9th Cir. 1973) ("The mere filing of a compulsory counterclaim does not establish a justiciable controversy where none previously existed."); *Akzona Inc. v. E.I. du Pont de Nemours & Co,* 662 F.Supp. 603, 622 (D. Del. 1987) (even a counterclaim that would present a justiciable controversy if asserted as a separate action is insufficient to confer Article III jurisdiction where the plaintiff's complaint fails to establish a live case or controversy). *Cf. Louisville & Nashville RR. Co. v. Mottley*, 211 U.S. 149, 29 S. Ct. 42 (1908) (federal-question jurisdiction must be determined on the face of the plaintiff's well pleaded

---

[6]*See also Perry v. Village of Arlington Heights*, 186 F.3d 826, 829 (7th Cir. 1999) (plaintiff bears burden to establish all three elements of standing: injury in fact, causal relationship between that injury and the challenged conduct, and likelihood that such injury would be redressed by a favorable decision); *Steele v. National Firearms Act Branch*, 755 F.2d 1410, 1413-14 (11th Cir. 1985) (same).

[7]*See also Perry*, 186 F.3d at 30 (affirming dismissal of plaintiff's challenge to automobile seizure statute for lack of standing, because plaintiff failed to allege in his complaint that he owned an automobile); *Steele*, 755 F.2d at 1414 (stating that plaintiff is required to plead each component of standing with specificity); *Walton v. Morgan Stanley & Co., Inc.*, 83 F.R.D. 628, 629-30 (S.D.N.Y. 1979) (dismissing action for lack of standing because plaintiffs' complaint contained no allegation of injury resulting from defendants' conduct), *aff'd*, 623 F.2d 796 (2nd Cir. 1980); *Strickland v. Flue-Cured Tobacco Cooperative Stabilization Corp.*, 643 F. Supp. 310, 315 (D.S.C. 1986) (noting that "the plaintiffs' complaint must contain allegations demonstrating that the action they challenge caused them injury-in-fact . . .").

complaint and cannot rest on an anticipated contention of the defendant); *Chuska Energy Co. v. Mobil Expl. & Prod. N. Am., Inc.*, 854 F.2d 727, 730 (5th Cir. 1988) (same).

Further, "even a plaintiff with standing is generally disqualified from representing a class if his individual claim becomes moot before the proposed class is certified." *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 135-36 (3rd Cir. 2000) (citations omitted); *see also Rocky*, 900 F.2d at 869 (observing that the Fifth Circuit "generally has concurred with the proposition that a purported class action is moot where the named plaintiff's individual claim [becomes] moot before class certification."). If the "putative class representative's individual claim becomes moot before he moves for class certification, then any subsequent motion ***must*** be denied and the entire action dismissed." *Holmes*, 213 F.3d at 135 (citation omitted; emphasis added); *see also Rocky*, 900 F.2d at 867-71 (affirming dismissal of class action because individual claims of named plaintiff had become moot before he moved for class certification); *Walker v. Haynes*, 659 F.2d 46, 48 (5th Cir. 1981) (same); *Lusardi v. Xerox Corp.*, 975 F.2d 964, 983 (3rd Cir. 1992) (same; noting: "We are not aware of a single case holding that a district court has subject matter jurisdiction to hear a motion to certify filed by named plaintiffs whose personal claims have expired.").[8]

Finally, a named plaintiff must establish the existence of a case or controversy for each and every claim he wishes to present. *See Association of Comm. Org. For Reform Now (ACORN) v.*

---

[8] Other conceivable options (such as allowing another member of the putative class to become the class representative) are impermissible. *Brown*, 650 F.2d at 771 ("[T]he proper procedure when the class plaintiff lacks individual standing is to dismiss the complaint . . . This dismissal should take place before class certification issues are reached."); *Gabrielsen*, 675 F. Supp. at 371 n.3 (same) (citation omitted). First, "[i]njection of absent 'class' members with live individual claims into an otherwise dead case could not correct the underlying Article III problem." *Lusardi*, 975 F.2d at 984. Second, substitution of a new class representative would not be necessary to prevent injustice, because any class member who wished to serve as a class representative could simply file a new action. *Fox v. Board of Trustees of the State University of New York*, 148 F.R.D. 474, 489 (N.D.N.Y. 1993), *aff'd*, 42 F.3d 135, 144 (2d Cir. 1994).

*Fowler*, 178 F.3d 350, 367 (5th Cir. 1999) (holding that alleged injury as a result of Louisiana's failure to comply with voting statute did "not provide [would-be class representatives] with standing to bring related claims for which they ha[d] suffered no Article III injury"). Thus, a dismissal of class claims for lack of justiciability can be required even where the named plaintiff retains a live individual claim against the defendant. *See Tucker v. Phyfer*, 819 F.2d 1030, 1033-35 (11th Cir. 1987) (holding that district court was required to dismiss class claims asserted by named plaintiff with a live individual claim for damages, because the proposed class representative had no personal stake in obtaining the declaratory and injunctive relief he sought on behalf of the putative class); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 101-09, 103 S. Ct. 1660, 1665-69 (1983) (same; holding that a named plaintiff who has standing to bring an individual claim for damages does not automatically have standing to litigate class claims for injunctive relief arising out of the same operative facts); *Blum v. Yaretsky*, 457 U.S. 991, 999, 102 S. Ct. 2777, 2783 (1982) (reasoning that a plaintiff who has been subject to one kind of injurious conduct does not "posses by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject."). Indeed, the law is crystal clear that a federal district court must dismiss for lack of justiciability any class claim in which the named plaintiff cannot demonstrate a personal stake at the time he moves for class certification. *See, e.g.. Fowler*, 178 F.3d at 356-62, 367; *Rocky*, 900 F.2d at 867-71; *Tucker*, 819 F.2d at 1033-35; *Walker*, 659 F.2d at 48.

**B.    DiLeo Lost His Personal Stake in His Valuation Claims Fifteen Days Before He First Asserted Those Claims on Behalf of the Putative Class.**

As noted *supra* at 2, the Second Amended Complaint alleges two different kinds of claims. First, it asserts "timing" claims arising from Liberty Fire's failure to tender the undisputed amount of DiLeo's "total loss" claim on or before July 21, 1999. *See* Second Amended Complaint at ¶ 17. The essence of these claims is that Liberty Mutual violated La. R.S. 22:658 and La. R.S. 22:1220

10

by failing to tender any portion of DiLeo's total loss claim–even the $7,841.13 Liberty Fire originally offered DiLeo–within sixty days after Maraldo made written demand for payment on May 21, 1999. *See id.* Accordingly, the Second Amended Complaint asserts its timing claims only on behalf of DiLeo, individually, and properly does not assert any timing claims on behalf of the putative class.[9]

Second, the Second Amended Complaint asserts "valuation" claims arising from Liberty Fire's alleged use of ADP and CCC computerized valuation systems rather than NADA guidebooks to calculate the "actual cash values" of "total loss" vehicles. *See id.* at ¶¶ 20-26, 29-33, 38-29, 44. The essence of these claims is that NADA guidebooks provide the only lawful method of establishing the actual cash values of total loss vehicles in Louisiana and that the ADP and CCC valuation systems intentionally undervalue such vehicles in contravention of the terms of Liberty Fire's standard form automobile policies and in violation of La. R.S. 22:658 and La. R.S. 22:1220. *See id.* at ¶¶ 22, 29-34, 38-39. Accordingly, the Second Amended Complaint asserts its valuation claims not only on behalf of DiLeo, individually, but also on behalf of the members of the putative class. *See id.* at ¶¶ 44-47.

As demonstrated below, however, DiLeo has not had a personal stake in his valuation claims–the only claims he asserts on behalf of the putative class–since he received the NADA retail value for his Porsche, less his $500.00 deductible, on November 30, 1999, some fifteen days before he first asserted those claims on behalf of the putative class. Indeed, DiLeo's valuation claims fail the "case or controversy" requirement for at least three reasons. First, the Second Amended

---

[9]In fact, Liberty Fire cannot imagine how DiLeo could possibly have a Rule 11 basis for alleging a timing claim on behalf of the putative class, as alleging such a claim would require DiLeo to aver that no member of the putative class received the undisputed portion of his or her total loss claim within thirty or sixty days after satisfactory proof of loss and/or written demand. Moreover, even if one could imagine a Rule 11 basis for such an averment, there is nothing in the Second Amended Complaint that comes close to making it.

11

Complaint fails to allege a redressable injury giving DiLeo standing to press his valuation claims. Although it alleges a failure to "tender the undisputed portion of [his] vehicle's value within sixty days of written demand" on May 21, 1999, the Second Amended Complaint stops far short of alleging that DiLeo still has not received the claimed "actual cash value" of his Porsche, less his $500 deductible. *See infra* at 13-14. Second, DiLeo's recent briefing admits (a) that he received the NADA retail value of his Porsche, less his $500 deductible, on November 30, 1999, and (b) that DiLeo first asserted claims on behalf of the putative class on December 15, 1999. Thus, it admits that DiLeo's individual valuation claim became moot fifteen days before he first attempted to convert this case to a putative class action. *See infra* at 14-15. Third, DiLeo's timing claim–that he is entitled to recover statutory damages under La. R.S. 22:1220 due to his failure to receive the undisputed portion of his total loss claim ($7,841.13) with sixty days after his written demand on May 21, 1999–does not give him a personal stake in the valuation claims he asserts on behalf of the putative class–that each member of the putative class is entitled to the NADA retail value for his or her "total loss" vehicle. *See infra* at 15-16. Accordingly, this Court should dismiss all of the claims asserted in DiLeo's Second Amended Complaint, save and except DiLeo's individual claim for statutory damages under La. R.S. 22:1220 for his failure to receive the undisputed portion of his total loss claim ($7,841.13) within sixty days after written demand. *See infra* at 17.[10]

---

[10]Although this motion focuses exclusively on the failure of DiLeo's valuation claims to present a justiciable case or controversy and does not reach the merits of DiLeo's NADA theories, the Court might be interested to know that Judge Vance recently dismissed identical valuation claims based on the very same NADA theories DiLeo has espoused in this case. *See Gauthreaux v. USAA Cas. Ins. Co.*, 2001 WL 65573, at*2-4 (E.D. La. Jan. 25, 2001) (holding (a) "there is no per se rule that the NADA guide is the only measure of actual cash value," (b) Directive 18 of the Commissioner of Insurance of the State of Louisiana "appears to be designed to prevent insurers from using published values such as those in the NADA guide or Kelley's Blue Book as the sole determinant of the value of used cars," and (c) "whether a NADA valuation is superior to another calculation [of actual cash value] is a question of fact that must be examined on a case-by-case basis").

1.    **The Second Amended Complaint Fails to Allege a Redressable Injury Giving DiLeo Standing to Assert His Valuation Claims.**

Conspicuously absent from the Second Amended Complaint is any allegation that Defendants' use of the ADP computerized valuation system ultimately caused DiLeo to receive less than the actual cash value of his Porsche, which he has repeatedly asserted to be the NADA retail value ($13,700.00) used to calculate the payment he admits accepting on November 30, 1999. Although the Second Amended Complaint alleges that DiLeo did not receive the actual cash value of his Porsche, less his deductible, before he filed this action on July 29, 1999, *see* Second Amended Complaint at ¶ 17, it stops far short of alleging that DiLeo still has not received that amount–or even that he had not received that amount when he first converted this case to a putative class action on December 15, 1999. Thus, the allegations of the Second Amended Complaint are legally insufficient to give DiLeo standing to pursue his claims that each member of the putative class is entitled to the NADA retail value for his or her "total loss" vehicle and that Defendants' use of the ADP and CCC valuation systems rather than NADA guidebooks breaches the terms of Liberty Fire's standard form automobile policies and violates La. R.S. 22:658 and La. R.S. 22:1220. *See supra* at 8 & nn.6, 7; *see also Trinity Indus., Inc.*, 963 F.2d at 798 ("a plaintiff ***must plead***" the elements of standing in her complaint) (emphasis added).

And, even if the allegations of the Second Amended Complaint somehow could be construed to give DiLeo standing to challenge Defendants' use of the ADP system, which they cannot, those allegations still could not give DiLeo standing to challenge Defendants' use of the CCC valuation system. Indeed, the Second Amended Complaint does not even hint–much less allege–any basis for concluding that Defendants ever used the CCC system to calculate the value of DiLeo's Porsche. Nor does it allege any other basis for concluding that DiLeo suffered an injury that was fairly traceable to Defendants' use of the CCC valuation system. In fact, the Second Amended Complaint

13

does not even allege that Defendants were still using the CCC valuation system at the time they calculated the $7,841.13 figure offered to DiLeo in April 1999. Thus, even if the allegations of the Second Amended Complaint could be construed to give DiLeo standing to challenge Defendants' use of the ADP system, those allegations could never give DiLeo standing to press a claim regarding Defendants' use of the CCC system prior to April 1999. *See supra* at 9-10; *see also Blum*, 457 U.S. at 999, 102 S. Ct. at 2783 (holding that a plaintiff who has been subject to one kind of injurious conduct does not "posses by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject."); *Fowler*, 178 F.3d at 360-62.

### 2.    DiLeo Admits that He Received the NADA Retail Value of His Porsche, Less His $500.00 Deductible, Before He Moved for Class Certification.

Moreover, the justiciability inquiry does not end with the allegations of DiLeo's complaint; it merely begins there. Although the law is clear that the existence of a justiciable controversy concerning DiLeo's valuation claims must appear on the face of his complaint, *see supra* at 8, the law is equally clear that justiciability can be destroyed when facts that do not appear on the face of DiLeo's complaint show that he lost his personal stake in his valuation claims before he first moved for class certification. *See Oaxaca v. Roscoe*, 641 F.2d 386, 390 (5th Cir. 1981) (noting that defendants may go outside the pleadings to make factual attacks on subject matter jurisdiction); *Stanley v. Wal Mart Stores. Inc.*, 839 F. Supp. 430, 433-35 (N.D. Tex. 1993) (holding–based on matters outside the pleadings–that named plaintiff had no standing to bring suit individually or on behalf of a putative class, because defendant had tendered actual damages and reasonable expenses); *see also Labora v. MCI Telecom. Corp.*, 1998 WL 1572719, at *3-4 (S.D. Fla. July 20, 1998) (looking past the plaintiff's complaint to dismiss a class action for lack of subject matter jurisdiction, because defendant had tendered payment for damages to the named plaintiff), *aff'd*, 204 F.3d 1121 (11th Cir. 1999), *cert. denied*, 120 S. Ct. 1995 (2000).

14

As noted *supra* at 13, DiLeo's recent submissions to this Court admit not only that he received the NADA retail value of his Porsche, less his $500 deductible, on November 30, 1999, but also that he first asserted claims on behalf of the putative class on December 15, 1999. *See* Plaintiff's Memorandum at 3; *see also* Plaintiff's Reply at 1 & n.1.[11] Thus, the record before the Court demonstrates conclusively that DiLeo's individual valuation claims became moot fifteen days before he first attempted to convert this case to a putative class action. As a result, the valuation claims DiLeo seeks to press on behalf of the putative class have never been justiciable. *See supra* at 9-10; *see also Holmes*, 213 F.3d at 135-36; *Lusardi*, 975 F.2d at 983; *Rocky*, 900 F.2d at 867-71; *Walker*, 659 F.2d at 48.

### 3.   DiLeo's Individual Timing Claim Does Not Give Him a Personal Stake in the Valuation Claims He Asserts on Behalf of the Putative Class.

Although DiLeo might argue to the contrary, his unsatisfied claim for statutory damages under La. R.S. 22:1220 for Liberty Fire's failure to tender on or before July 21, 1999, the $7,841.13 it offered DiLeo for his total loss claim on April 12, 1999, does not give him a personal stake in the valuation claims he seeks to litigate on behalf of the putative class.[12]

---

[11]DiLeo has also admitted receiving a $1,320.00 statutory penalty under La. R.S. 22:658 for Defendants' failure to pay the undisputed, $7,841.13 portion of his claim within thirty days after Maraldo's written demand on May 21, 1999, as well as attorneys' fees of $2,000.00 under La. R.S. 22:658, $311.04 in legal interest under La. R.S. 22:658 from July 29, 1999, to December 3, 1999, and $120.00 in court costs under La. R.S. 22:658. *See* Plaintiff's Memorandum at 6-7. Thus, the only conceivable element of damage that DiLeo has not admitted receiving before he moved for class certification is the statutory damages he claims under La. R.S. 22:1220 for Defendants' failure to pay the undisputed portion of his claim ($7,841.13) within sixty days after Maraldo's written demand on May 21, 1999. As demonstrated *infra* at 15-16, that unsatisfied timing claim cannot give DiLeo standing to press the valuation claims he seeks to assert on behalf of the putative class.

[12]DiLeo made this argument in the reply brief he filed in support of his motion for leave to file his Second Amended Complaint. Concluding that these jurisdictional issues should be addressed through the District Court's resolution of a dispositive motion, however, Magistrate Judge Wilkinson declined to address them. *See* Hearing on Motion at 2 (filed Jan. 25, 2001).

15

DiLeo's timing claim seeks to remedy an alleged harm that is completely distinct from the putative harm underlying his valuation claim. Specifically, the asserted harm flowing from the conduct underlying DiLeo's timing claims is the loss of the use of the undisputed portion of his claim ($7,841.13) from July 21, 1999, to November 30, 1999. *See* Second Amended Complaint at ¶ 17 (alleging that Liberty Mutual failed to tender the undisputed portion of the Porsche's value within sixty days of written demand). In contrast, the asserted harm flowing from the conduct underlying DiLeo's valuation claims is that all total loss claimants allegedly received too little money for their total loss claims. *See id.* at ¶¶ 22-23, 38, 44 (alleging that Defendants have engaged in a systematic pattern of undervaluing total loss claims through the use of CCC and ADP). Thus, DiLeo's unsatisfied claim under La. R.S. 22:1220 for Liberty Fire's failure to tender the undisputed portion of DiLeo's total loss claim on or before July 21, 1999, is legally insufficient to provide him the requisite personal interest in his valuation claims to allow him to prosecute those claims on behalf of the putative class. *See supra* at 9-10; *see also Blum*, 457 U.S. at 999, 102 S. Ct. at 2783; *Fowler*, 178 F.3d at 360-62.[13]

---

[13]Similarly insufficient to keep DiLeo's valuation claims alive are Liberty Mutual's contentions (a) that DiLeo's mechanic stole the proceeds of an authorized sale of the Porsche rather than the Porsche itself and (b) that proving as much would entitle Liberty Fire to recover the $18,951.04 paid to DiLeo on November 30, 1999. *See* Defendant's Original Answer to Plaintiff's Amended Complaint for Class Certification and for Damages, Statutory Penalties and Attorneys' Fees at ¶ 16(b) (filed Nov. 1, 2000); *see also* Defendant's Memorandum in Opposition to Plaintiff's Motion to Strike at 3-4, 20-21 (filed Dec. 12, 2000). As noted *supra* at 8-9, justiciability must be established by the allegations of DiLeo's complaint. *See supra* at 8-9; *see also Raines v. Byrd*, 521 U.S. 811, 818, 117 S. Ct. 2312, 2317 (1997) ("One element of the case-or-controversy requirement is that [plaintiffs], *based on their complaint*, must establish that they have standing to sue."); *Trinity Industries*, 963 F.2d at 798 (plaintiff must plead the elements of standing in her complaint); *Gabrielson*, 675 F. Supp. at 369 (same). Justiciability cannot be predicated on any defense or counterclaim, whether already asserted or merely anticipated. *See supra* at 8-9; *see also International Video*, 484 F.2d at 636; *Akzona*, 662 F. Supp. at 622. Thus, the lack of a justiciable controversy when DiLeo first pleaded his valuation claims on behalf of the putative class on December 15, 1999, cannot be cured by anything Liberty Mutual has pleaded or argued since then. *See supra* at 8-9; *see also International Video*, 484 F.2d at 636; *Akzona*, 662 F. Supp. at 622.

### 4.     The Lack of Justiciability Requires Dismissal.

Further, there are no alternatives to dismissal of DiLeo's valuation claims. As noted *supra* at 9 & n.8, other options (such as allowing another class member to become the class representative) are improper where, as here, the named plaintiff had no personal stake in his class claims at the time that he filed those claims and moved for class certification. *See Rocky*, 900 F.2d at 867-71; *Walker*, 659 F.2d at 48; *Brown*, 650 F.2d at 771; *see also Stanley*, 839 F. Supp. at 433-35; *Gabrielson*, 675 F. Supp. at 371 n.3. Accordingly, DiLeo's lack of a sufficient personal stake in his valuation claims to give this Court Article III power to adjudicate those claims at his request requires the Court to dismiss those claims for lack of justiciability.[14]

## IV.     CONCLUSION.

For the reasons stated above, the Court should dismiss all of the claims asserted in the Second Amended Complaint, save and except DiLeo's individual claim for statutory damages under La. R.S. 22:1220 for Liberty Fire's failure to pay the undisputed portion of his total loss claim ($7,841.13) within sixty days after written demand.

---

[14]Several Supreme Court decisions have recognized limited exceptions to the mootness doctrine where named plaintiffs' individual claims became moot after they filed claims on behalf of a putative class and moved for class certification. *See, e.g., Deposit Nat'l Guar. Bank v. Roper*, 445 U.S. 326, 337-40, 100 S. Ct. 1166, 1173-75 (1980) (named plaintiff permitted to appeal denial of class certification where defendant tendered amount of named plaintiff's individual claim only after the district court denied named plaintiff's timely motion for class certification and named plaintiff rejected defendant's tender). Several Fifth Circuit decisions have analyzed and applied those limited exceptions. *See, e.g., Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1040-51 (5th Cir. 1981) (named plaintiff permitted to appeal denial of class certification where defendant tendered amount of named plaintiff's individual claim only after named plaintiff filed class claims and moved for class certification and named plaintiff rejected tender). Importantly, though, Defendants' research has not revealed a single case in which any court has ever recognized an exception to the mootness doctrine where, as here, the named plaintiff had no personal stake in his class claims because he accepted payment for his individual claim before he first alleged claims on behalf of a putative class.

17

February 27, 2001

Respectfully submitted,

W. Shelby McKenzie, No. 10020
David M. Bienvenu, Jr., No. 20700
TAYLOR, PORTER, BROOKS
& PHILLIPS, L.L.P.
451 Florida Street, 8th Floor
P.O. Box 2471
Baton Rouge, Louisiana 70821
Telephone: (225) 387-3221
Facsimile: (225) 346-8049

Judy Y. Barrasso, No. 2814
Meredith A. Cunningham, No. 26465
STONE, PIGMAN, WALTHER, WITTMANN
& HUTCHINSON, L.L.P.
546 Carondelet Street
New Orleans, Louisiana 70130-3588
Telephone: (504) 581-3200
Facsimile: (504) 581-3361

Robert C. Walters
Russell Yager
Keefe M. Bernstein
VINSON & ELKINS L.L.P.
3700 Trammell Crow Center
2001 Ross Avenue
Dallas, Texas 75201
Telephone: (214) 220-7700
Telecopy: (214) 999-7716

*Attorneys for Defendants*

18

## CERTIFICATE OF SERVICE

I hereby certify that, on this 27th day of February, 2001, I caused a true and correct copy of Defendants' Memorandum in Support of Their Motion to Dismiss DiLeo's Valuation Claims for Lack of Justiciability to be served on the following counsel by fax and first-class mail:

Steven C. Thompson, Esq.
MOORE, WALTERS & THOMPSON, A
PROFESSIONAL CORPORATION
6513 Perkins Road
Baton Rouge, Louisiana 70808
Telephone: (225)766-1100
Facsimile: (225) 767-4486

Keith P. Richards, Esq.
RICHARDS LAW FIRM, a PLC
521 Europe Street
Baton Rouge, Louisiana 70802
Telephone: (225) 334-9222
Facsimile: (225) 334-9290

David J. Maraldo, Esq.
DAVID J. MARALDO, A PROFESSIONAL
LAW CORPORATION
4051 Veterans Blvd., Suite 208
Metairie, Louisiana 70002
Telephone: (504) 454-2769
Facsimile: (504) 454-3855

Richard C. Trahant, Esq.
808 North Causeway Boulevard
Metairie, Louisiana 70001
Telephone: (504) 831-4357
Facsimile: (504) 833-1329

Scott LaBarre, Esq.
GAUTHIER, DOWNING, LABARRE,
BEISER & DEAN
3500 North Hullen Street
Metairie, Louisiana 70002
Telephone: (504) 456-8600
Facsimile: (504) 456-8624

Dallas 450630 3

19

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DR. VINCENT DILEO, JR., | § | CIVIL ACTION |
| | § | |
| Plaintiff, | § | NO. 00-0101 |
| | § | |
| VS. | § | SECTION: "S" (2) |
| | § | |
| LIBERTY MUTUAL INSURANCE | § | UNITED STATES DISTRICT |
| COMPANY, et al., | § | JUDGE MARY ANN VIAL LEMMON |
| | § | |
| Defendants. | § | MAGISTRATE JOSEPH C. WILKINSON, JR. |

**NOTICE OF HEARING ON DEFENDANTS' MOTION TO DISMISS
DILEO'S VALUATION CLAIMS FOR LACK OF JUSTICIABILITY**

Please take notice that Defendants' Motion to Dismiss DiLeo's Valuation Claims for Lack

of Justiciability has been set for hearing before United States District Judge Mary Ann Vial Lemmon

at **10:00 a.m. on Wednesday, March 21, 2001.**

1

February 27, 2001

Respectfully submitted,

W. Shelby McKenzie, No. 10020
David M. Bienvenu, Jr., No. 20700
TAYLOR, PORTER, BROOKS
& PHILLIPS, L.L.P.
451 Florida Street, 8th Floor
P.O. Box 2471
Baton Rouge, LA 70821
Telephone:  (225) 387-3221
Facsimile:  (225) 346-8049

Judy Y. Barrasso, No. 2814
Meredith A. Cunningham, No. 26465
STONE, PIGMAN, WALTHER, WITTMAN
& HUTCHINSON, L.L.P.
546 Carondelet Street
New Orleans, LA 70130-3588
Telephone:  (504) 581-3200
Facsimile:  (504) 581-3361

Robert C. Walters
Russell Yager
Keefe M. Bernstein
VINSON & ELKINS L.L.P.
3700 Trammell Crow Center
2001 Ross Avenue
Dallas, Texas 75201
Telephone:  (214) 220-7700
Telecopy:  (214) 999-7716

*Attorneys for Defendants*

2

## CERTIFICATE OF SERVICE

I hereby certify that, on this 27th day of February, 2001, I caused a true and correct copy of the foregoing Notice of Hearing on Defendants' Motion to Dismiss DiLeo's Valuation Claims for Lack of Justiciability to be served on the following counsel via facsimile and first class mail:

Scott LaBarre, Bar No. 17659
GAUTHIER, DOWNING, LABARRE,
BEISER & DEAN
3500 North Hullen Street
Metairie, Louisiana 70002
Telephone: (504) 456-8600
Facsimile: (504) 456-8624

Keith P. Richards, Bar No. 22564
RICHARDS LAW FIRM, APLC
521 Europe Street
Baton Rouge, Louisiana 70802
Telephone: (225) 334-9222
Facsimile: (225) 334-9290

Richard C. Trahant, Bar No. 22653
808 North Causeway Boulevard
Metairie, Louisiana 70001
Telephone: (504) 831-4357
Facsimile: (504) 833-1329

Steven C. Thompson, Bar No. 14469
MOORE, WALTERS & THOMPSON,
A PROFESSIONAL CORPORATION
6513 Perkins Road
Baton Rouge, Louisiana 70808
Telephone: (225)766-1100
Facsimile: (225) 767-4486

David J. Maraldo, Bar No. 24541
DAVID J. MARALDO,
A PROFESSIONAL LAW
CORPORATION
4051 Veterans Blvd., Suite 208
Metairie, Louisiana 70002
Telephone: (504) 454-2769
Facsimile: (504) 454-3855

Dallas 450614 1

3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DR. VINCENT DILEO, JR., | § | CIVIL ACTION |
| | § | |
| Plaintiff, | § | NO. 00-0101 |
| | § | |
| VS. | § | SECTION: "S" (2) |
| | § | |
| LIBERTY MUTUAL INSURANCE | § | UNITED STATES DISTRICT |
| COMPANY, et al., | § | JUDGE MARY ANN VIAL LEMMON |
| | § | |
| Defendants. | § | MAGISTRATE JOSEPH C. WILKINSON, JR. |

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
## DILEO'S VALUATION CLAIMS FOR LACK OF JUSTICIABILITY

Upon considering Defendants' Motion to Dismiss DiLeo's Valuation Claims for Lack of

Justiciability and Defendants' Memorandum in Support of Their Motion to Dismiss DiLeo's

Valuation Claims for Lack of Justiciability, the Court concludes that the motion should be granted,

and therefore ORDERS that Defendants' Motion to Dismiss DiLeo's Valuation Claims for Lack of

Justiciability is granted, and further ORDERS that all of the claims asserted in the Second Amended

Complaint for Class Certification and for Damages, Statutory Penalties and Attorneys' Fees (filed

Jan. 25, 2001), save and except DiLeo's individual claim for statutory damages under La. R.S.

1

22:1220 for Liberty Fire's alleged failure to pay the undisputed potion of his total loss claim within sixty days after written demand are hereby dismissed.

Signed:_____          _____
                                    UNITED STATES DISTRICT JUDGE