U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED JAN 2 5 2001

LORETTA G. WHYTE
CLERK

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DR. VINCENT DILEO, JR. | CIVIL ACTION |
| | NUMBER: 00-0101 |
| VERSUS | |
| | SECTION "S"- JUDGE LEMMON |
| LIBERTY MUTUAL INSURANCE COMPANY | MAGISTRATE WILKINSON |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### SECOND AMENDED COMPLAINT FOR CLASS CERTIFICATION AND FOR DAMAGES, STATUTORY PENALTIES AND ATTORNEYS' FEES

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**NOW INTO COURT**, through undersigned counsel, comes Plaintiff, **DR. VINCENT DILEO, JR.**, individually and as representative of a class described herein, who, in accordance with Fed.R.Civ.P. 15, respectfully represents as follows:

### PARTIES AND JURISDICTION

1.

Plaintiff is a competent person of the full age of majority who is and at all times relevant hereto was a domiciliary of the Parish of Jefferson, State of Louisiana.

2.

Made Defendants herein are:

a) Liberty Mutual Insurance Company, a foreign insurance company licensed to do business and actually conducting business in the State of Louisiana and

b) Liberty Mutual Fire Insurance Company, a foreign insurance company licensed to do business and actually conducting business in the State of Louisiana.

3.

According to the United States Supreme Court's disposition of *Free v. Abbott Laboratories, Inc.*, 176 F.3d 298 (5th Cir. 1999), affirmed by equally divided court _____ U.S. _____, 120

___ Fee_____
___ Process_____
_X_ Dktd_____
___ CtRmDep____
___ Doc.No._____

S.Ct. 1578, 146 L.Ed.2d 306 (April 3, 2000), this Honorable Court possesses jurisdiction over this putative class action wherein an award of attorney's fees in excess of $75,000.00 is sought by Plaintiff

## THE CLASS

4.

The class Plaintiff seeks to represent consists of the following persons:

Any person who was issued or otherwise covered by a policy of automobile insurance in Louisiana by Liberty Mutual Fire Insurance Company whose vehicle was deemed a "total loss" after claims adjustment by either Liberty Mutual Fire Insurance Company or Liberty Mutual Insurance Company within ten years of December 15, 1999, and whose vehicle's "actual cash value" was determined by either Liberty Mutual Fire Insurance Company or Liberty Mutual Insurance Company by reference to CCC Information Services Group, Inc. or ADP Claims Solutions Group, Inc. and was paid or has been offered an amount for the "total loss" vehicle by Liberty Mutual Fire Insurance Company or Liberty Mutual Insurance Company which was determined by CCC Information Services Group, Inc. or ADP Claims Solutions Group, Inc.

5.

Based upon information and belief derived from discovery responses heretofore provided by Liberty Mutual Insurance Company, Dr. Dileo contends that the class of potential plaintiffs consists of thousands, a number of parties too numerous to join as a practical matter.

6.

A common character exists between the questions of law and fact at issue in Dr. Dileo's cause of action against Liberty Mutual Fire Insurance Company for the insurer's breach of its contract with Dr. Dileo and the bad faith adjusting of his first party "total loss" claim by Liberty Mutual Fire Insurance Company and Liberty Mutual Insurance Company and the causes of action of the other members of the putative class against Liberty Mutual Fire Insurance Company and Liberty Mutual Insurance Company for the insurers' breach of their contracts with the other class members and their bad faith adjusting of their first party "total loss" claims. The commonality of the claims available to

Dr. Dileo and the other members of the putative class predominate over any questions of law and fact affecting only individual members of the putative class.

7.

Dr. Dileo's cause of action against Liberty Mutual Fire Insurance Company for the insurer's breach of contract and Liberty Mutual Fire Insurance Company and Liberty Mutual Insurance Company's bad faith adjusting of his first party "total loss" claim is typical of the causes of action available to the class members against Liberty Mutual Fire Insurance Company and Liberty Mutual Insurance Company.

8.

Dr. Dileo, who has both agreed to serve as representative of the aforedescribed class of persons and retained attorneys experienced in class action and insurance bad faith, represents to this Honorable Court that there exists no conflict between his interests and the interests of the potential class members. Therefore, Dr. Dileo avers that he will fairly and adequately represent and protect the interests of all members of the putative class.

9.

Given the predominance of common issues of law and fact applicable to the putative class members' claims against Liberty Mutual Fire Insurance Company and Liberty Mutual Insurance Company, and that 1) other means of adjudicating the claims and defenses are impractical and inefficient, 2) class action offers the most appropriate means of adjudicating the applicable claims and defenses, 3) absent members of the class have no substantial interest in individually controlling the prosecution of separate actions, 4) management of the class action poses no unusual difficulties, 5) the quantum of the claims of many individual class members is insufficient to justify singular prosecution and 6) in view of the complexities of the issues and the expenses of litigation, the

maintenance of a class action is superior to individual adjudications.

## FACTUAL AND PROCEDURAL PREDICATE

10.

Dr. Dileo initially obtained a policy of automobile insurance from Liberty Mutual Fire Insurance Company or Liberty Mutual Insurance Company for his 1982 Porsche 928 in 1986.

11.

Said automobile insurance policy remained continuously in full force and effect during all of the events pertinent hereto.

12.

On or about September 16, 1996, Dr. Dileo's 1982 Porsche 928 was stolen.

13.

Dr. Dileo established a insurance claim for his loss.

14.

Dr. Dileo's claim was adjusted by Liberty Mutual Insurance Company and. Liberty Mutual Fire Insurance Company.

15.

Liberty Mutual Insurance Company and Liberty Mutual Fire Insurance Company deemed Dr. Dileo's vehicle a "total loss" and, on or about April 12, 1999, their authorized representative, Sandra Kennedy, offered to pay Dr. Dileo $ 7,841.13 ($8,341.00 minus the insured's $500.00 deductible) for the vehicle, a figure derived from a computer valuation of the insured's vehicle employing software created and marketed by ADP Claims Solutions Group, Inc.

16.

Dr. Dileo demanded payment by Liberty Mutual Insurance Company of the retail value

ascribed to the vehicle by the National Automobile Dealers Association's (hereinafter "NADA") *Official Used Car Guide*, which equaled $13,700.00 at the time of the loss.

17.

After Liberty Mutual Insurance Company refused to even tender the undisputed portion of the vehicle's value within sixty days of written demand, Dr. Dileo commenced litigation against Liberty Mutual Insurance Company in the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana, Number 542,207, Division B seeking recovery of the NADA retail value of his "total loss" vehicle as well as damages, penalties and attorney's fees prescribed by La. R.S. 22:658 and La. R.S. 1220.

18.

Liberty Mutual Insurance Company did not except to the petition on any peremptory grounds, and, in fact, it filed an answer to the lawsuit.

19.

On December 15, 1999, Liberty Mutual Insurance Company filed a "First Supplemental and Amending Answer" which read, in pertinent part, as follows:

> "NOW INTO COURT, through undersigned counsel, comes **LIBERTY MUTUAL INSURANCE COMPANY**, defendant, which files a First Supplemental and Amending Answer as follows:
>
> "1.
> Liberty Mutual admits that the NADA value of plaintiff's automobile at the time of loss was $13,700 and admits that it owes plaintiff the sum of $13,700 minus the policy's deductible of $500. Liberty Mutual will unconditionally tender this amount plus interest from the date of judicial demand."
>
> "2.
> Liberty Mutual admits that its failure to tender the above amount within 30 or 60 days after satisfactory proof of loss was without probable cause. Liberty Mutual will unconditionally tender the amount of $311 constituting legal interest from July 29,

1999, $1,320 representing statutory penalties payable pursuant to La. R.S. 22:658, attorney's fees in the amount of $2,000, court costs in the amount of $120 and return of premiums in the amount of $2000."

## CLAIMS AGAINST LIBERTY MUTUAL FIRE INSURANCE COMPANY

20.

Pursuant to the terms of the policy in effect between January 20, 1996, and January 20, 1997, in consideration for the payment of the premium by Dr. Dileo and the applicable $500.00 deductible, Liberty Mutual Fire Insurance Company agreed to pay Dr. Dileo the "actual cash value" of his 1982 Porsche 928 if the insurer deemed the vehicle to be a "total loss."

21.

Pursuant to the terms of the policies in effect at the time when the putative class members' vehicles where declared "total losses," in consideration for the payment of the premium by the insureds, Liberty Mutual Fire Insurance Company agreed to pay them the "actual cash value" of their vehicles.

22.

Upon information and belief, Plaintiff alleges that for several years Liberty Mutual Fire Insurance Company either directly or through Liberty Mutual Insurance Company has engaged in a systematic pattern of undervaluing "total loss" claims by insureds through the use of CCC Information Services Group, Inc. (hereinafter "CCC") or ADP Claims Solutions Group, Inc. (hereinafter "ADP") to valuate all "total loss" claims by insureds.

23.

In light of the aforementioned judicial admission by Liberty Mutual Fire Insurance Company's claims adjuster, Liberty Mutual Insurance Company, that the "actual cash value" for Dr. Dileo's was

determined by NADA, Liberty Mutual Fire Insurance Company similarly owes each member of the putative class the NADA retail value for his/her "total loss" vehicle.

24.

Because La. R.S. 22:652 strictly prohibits the discrimination by an insurer "in favor of particular individuals or persons, or between insureds . . . in the benefits payable" to insureds, and Liberty Mutual Insurance Company on its own behalf and on behalf of the related company Liberty Mutual Fire Insurance Company has judicially admitted that it owed Dr. Dileo the NADA retail value for his "total loss" vehicle, the insurer is legally estopped from arguing that it does not owe each member of the aforedescribed putative class the NADA retail value for his/her "total loss" vehicle.

25.

In the alternative, and only should this Honorable Court find that Liberty Mutual Fire Insurance Company is not estopped from arguing that it does not owe each member of the aforedescribed putative class the NADA retail value for his/her "total loss" vehicle, Plaintiff avers that Liberty Mutual Fire Insurance Company nevertheless owes all members of the putative class the NADA retail value for their "total loss" vehicles because the Liberty Mutual Fire Insurance Company policy, which was drafted by the insurer, does not define "actual cash value" and Brian Faucheaux, an authorized representative of the related company which adjusts claims on behalf of Liberty Mutual Fire Insurance Company has admitted that the term is ambiguous. Therefore, in accordance with La. Civ Code art. 2056, which provides as follows:

> In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished the text.
>
> A contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party.

the ambiguity regarding the definition of "actual cash value" must be construed against Liberty

Mutual Fire Insurance Company.

26.

In the alternative, and only should this Honorable Court find that Liberty Mutual Fire Insurance Company is not estopped from arguing that it does not owe each member of the aforedescribed putative class the NADA retail value for his/her "total loss" vehicle, Plaintiff avers that Liberty Mutual Fire Insurance Company nevertheless owes each member of the putative class said sum because, pursuant to clear Louisiana law, contracts of insurance are to be strictly construed against the insurer and in favor of the insured. See, e.g., *Specialty Food Systems, Inc. v. Reliance Ins. Co. of Illinois*, 45 F.Supp.2d 541 (E.D.La.), *affirmed at* 200 F.3d 816 (5th Cir. 1999) ("Under Louisiana law, ambiguity in insurance contracts must be resolved in favor of the insured."); *Edwards v. Life & Cas. Ins. Co. of Tenn.*, 25 So.2d 552 (La. App.), affirmed at 210 La. 1024, 29 So.2d 50 (La. 1946)("Ambiguous provisions of an insurance policy will be construed most strongly against the insurer, and in favor of the insured." Therefore, because the Liberty Mutual Fire Insurance Company insurance policy does not define "actual cash value" and an authorized representative of the company which adjusts claims on Liberty Mutual Fire Insurance Company's behalf has admitted that the term is ambiguous, in accordance with Louisiana law the ambiguity should be construed against Liberty Mutual Fire Insurance Company.

27.

Louisiana law provides that an insurer is under an affirmative duty to clearly define its obligation to its insured. See *Cooling v. U. S. Fidelity & Guaranty Co.*, 269 So.2d 294 (La. App. 3 Cir.), *writ refused* 272 So.2d 373 (La. 1972).

28.

Louisiana law provides that when a term contained in an insurance contract is susceptible to two interpretations, courts will endeavor by means of generally accepted legal techniques to ascertain common and popular meaning of such word or phrase. See, *e.g., Spillers v. ABH Trucking Co., Inc.*, 30,332 (La. App. 2 Cir. 4/13/98), 713 So.2d 505, *rehearing granted in part, writ denied*, 98-1313 (La. 6/26/98), 719 So.2d 1063, *writ denied*, 98-1327 (La. 6/26/98), 719 So.2d 1287 (Terms and provisions of insurance contracts are to be construed in their general and popular meaning, and any ambiguity in an insurance contract will be construed against the insurer and in favor of the insured).

29.

The general and popular meaning of "actual cash value" of a vehicle is the NADA retail value for the vehicle, rather than the value ascribed by either CCC or ADP. See *State Farm Mutual Automobile Insurance Company v. Berthelot*, 98-1011 (La. 4/13/99); 732 So.2d 1230, wherein Justice Knoll wrote as follows for the majority:

> Accordingly, the inescapable conclusion that [a tort victim's vehicle did not have a higher value when it was totaled simply because a sales tax was paid when it was originally purchased nine years earlier] *is further buttressed by the industry-wide use of the N.A.D.A. OFFICIAL USED CAR GUIDE which values a vehicle without reference to sales tax. Much like the tort victim's insurance policy, N.A.D.A. references the vehicle's market value, taking into consideration its age and condition at the time of the loss.*

30.

The contention that "actual cash value" is determined by NADA rather than CCC or ADP is further supported by the very recent decision of the Louisiana Supreme Court to deny the application for a writ of *certiorari* made by Allstate Insurance Company, and supported by *amicus curiae* CCC Information Services Group, Inc., in *Hayes v. Allstate Insurance Company*, 99-1558 (La. App. 3 Cir. 3/1/00), 758 So.2d 900, *writ denied* 2000-C-1587 (La. 8/31/00), 2000 WL 1260198 where the intermediate court of appeal upheld the trial court's award of the NADA value of the vehicle to the

Plaintiff and opined that the "CCC value assigned to Ms. Hayes' vehicle was not reasonable, which Allstate should also have recognized."

31.

The contention that "actual cash value" is determined by NADA rather than CCC or ADP is further supported by La. R.S. 32:702(11) which provides as follows:

> The term "total loss" means a motor vehicle which has sustained damages equivalent to seventy five percent or more of the market value as determined by the most current National Automobile Dealers Association Handbook.

32.

Dr. Dileo alleges that Liberty Mutual Fire Insurance Company's systematic use of CCC and ADP to valuate insureds' "total loss" vehicles results in the undervaluing of said vehicles and constitutes both a breach of the insurance contract and bad faith adjusting of claims by the insurer within the purview of La. R.S. 22:658 and La. R.S. 22:1220.

33.

Dr. Dileo likewise alleges that Liberty Mutual Fire Insurance Company's failure or refusal to pay insureds the NADA *Official Used Car Guide* value for their "total loss" vehicles constitutes both a breach of the insurance contract and bad faith adjusting of claims by the insurer within the purview of La. R.S. 22:658 and La. R.S. 22:1220.

34.

Upon information and belief, Plaintiff alleges that Liberty Mutual Fire Insurance Company charges insureds, such as Dr. Dileo and the other members of the putative class, policy premiums based upon either the purchase price of the insured vehicle or its NADA value. Therefore, it would be a breach of the duty of good faith and fair dealing imposed upon Liberty Mutual Fire Insurance Company by La. R.S. 22:1220(A) for the insurer to pay a first party "total loss" claim on the basis

of a vehicle valuation determined by either ADP or CCC rather than NADA.

## CLAIMS AGAINST LIBERTY MUTUAL INSURANCE COMPANY

35.

Liberty Mutual Insurance Company adjusts automobile claims in Louisiana on behalf of Liberty Mutual Fire Insurance Company and, upon information and belief, has done so for the ten years prior to December 15, 1999.

36.

As an adjuster of automobile claims in Louisiana on behalf of Liberty Mutual Fire Insurance Company, Liberty Mutual is and has been an "insurer" within the purview of La. R.S. 22:1212 to Liberty Mutual Fire Insurance Company's insureds with automobile claims.

37.

As an "insurer" to Liberty Mutual Fire Insurance Company's insureds with automobile claims, Liberty Mutual Insurance Company owes and has owed said insureds the duties prescribed by La. R.S. 22:658 and La. R.S. 22:1220.

38.

Upon information and belief, Plaintiff alleges that for several years Liberty Mutual Insurance Company has engaged in a systematic pattern of undervaluing "total loss" claims through the use of CCC Information Services Group, Inc. (hereinafter "CCC") or ADP Claims Solutions Group, Inc. (hereinafter "ADP") to valuate all "total loss" claims by insureds.

39.

Said systematic undervaluing of "total loss" claims constitutes bad faith claims adjusting by Liberty Mutual Insurance Company within the contemplation of La. R.S. 22:658 and La. R.S. 22:1220.

40.

Liberty Mutual Insurance Company has judicially confessed its liability unto Dr. Dileo for the bad faith adjustment of his "total loss" claim.

41.

Liberty Mutual Insurance Company has unconditionally tendered to Dr. Dileo certain damages, penalties and attorney's fees for its violations of Louisiana insurance bad faith statutes.

42.

Because of its systematic undervaluation of "total loss" claims it has adjusted on behalf of Liberty Mutual Fire Insurance Company, Liberty Mutual Insurance Company is liable in solido unto all Liberty Mutual Fire Insurance Company "total loss" claimants since December 15, 1989.

## **PRESCRIPTION**

43.

Because the claims against Liberty Mutual Insurance Company and Liberty Mutual Fire Insurance Company by Dr. Dileo and the putative class members are borne of a contractual relationship, the applicable prescriptive period is ten years. See *We Sell Used Cars, Inc. v. United National Insurance Company*, 30-671 (La. App. 2nd Cir. 6/24/98); 715 So.2d 656.

## **DAMAGES**

44.

Dr. Dileo and all putative class members claim damages equal to the difference between what was paid by Liberty Mutual Fire Insurance Company or Liberty Mutual Insurance Company pursuant to a CCC or an ADP valuation and what Dr. Dileo and all putative class members should have been paid pursuant to the NADA.

45.

Dr. Dileo and all putative class members are entitled to an award of penalties against Liberty Mutual Fire Insurance Company pursuant to La. R.S. 22:658 and/or La. R.S. 22:1220.

46.

Dr. Dileo and all putative class members are entitled to an award of penalties against Liberty Mutual Insurance Company pursuant to La. R.S. 22:658 and/or La. R.S. 22:1220.

47.

Dr. Dileo and all putative class members are entitled to an award of attorney fees against Liberty Mutual Fire Insurance Company and Liberty Mutual Insurance Company pursuant to La. R.S. 22:658.

**WHEREFORE,** Plaintiff, Dr. Vincent Dileo, Jr., individually, and in his capacity as representative of the aforedescribed class of persons, prays for judgment certifying said class, appointing Dr. Vincent DiLeo, Jr. as class representative, and, after all due proceedings are had, an award in favor of the class and against Liberty Mutual Fire Insurance Company and Liberty Mutual Insurance Company for all damages incurred by the class members, statutory penalties in accordance with La. R.S. 22:658 and/or La. R.S. 22:1220, attorney fees, judicial interest from date of initial judicial demand and for all other general and equitable relief available under the circumstances.

Respectfully submitted by:

_____
Keith P. Richards (LSBA #22564)
**RICHARDS LAW FIRM, APLC**
521 Europe Street
Baton Rouge, Louisiana 70802
Telephone:(225) 334-9222

-and-
Richard C. Trahant (LSBA #22,653), TA
Attorney at Law
808 North Causeway Boulevard
Metairie, LA 70002
Telephone: (504)831-4357
-and-

-and-
David J. Maraldo (LSBA #24541)
Attorney at Law
4051 Veterans Boulevard, Ste. 208
Metairie, LA 70002
(504)454-2769
-and-
Steven C. Thompson (LSBA #14469)
**MOORE, WALTERS & THOMPSON**
6513 Perkins Road
Baton Rouge, LA 70808
(225)766-1100
-and-
Scott LaBarre (LSBA #17659)
**GAUTHIER, DOWNING, LaBARRE
    BEISER & DEAN**
3500 North Hullen Street
Metairie, LA 70002